THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FRANK ALEX HENENBERG, Defendant-Appellant.

Second District (1st Division)   No. 74-242

Opinion filed April 19, 1976.

Ralph Ruebner and Mary McCormick, both of State Appellate Defender's Office, of Elgin, for appellant.

William Cowlin, State's Attorney, of Woodstock (James M. Boback, Assistant State's Attorney, and Edward N. Morris and Martin P. Moltz, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The defendant was convicted of both armed robbery and murder after a jury trial. He was sentenced to concurrent terms of 150 to 300 years for murder and 50 to 150 years for armed robbery.[1] He appeals, contending that the trial court committed reversible error in allowing the State's witnesses to testify that they met defendant at penitentiaries 6 and 16 years prior to trial. He additionally contends that he was deprived of a fair trial by other evidentiary rulings and that, in any event, the court erred in entering more than one judgment of conviction and in imposing concurrent sentences.

The defendant does not question the sufficiency of the evidence.

---

[1] The crimes occurred in 1969. Defendant was convicted of the same charges in a prior trial and sentenced to death. On appeal the judgments of conviction were reversed in 55 Ill. 2d 5 (1973) and the cause remanded for a new trial.

However, reference to the testimony is required for an understanding of the issues which are raised.

Hunters found the body of Martin Zlogar on a farm in McHenry County on December 13, 1969. In the opinion of the pathologist the victim had been dead for about 90 days. He was last seen at his residence in Illinois on September 12, 1969. He had indicated to his roommate and co-worker that he was going to Minneapolis on business and to see a girl friend and would not return to work at O'Hare Airport until Tuesday, September 16. The manager of a hotel near Minneapolis testified that a person who signed his name as Martin Zlogar had checked into the hotel between 8 a.m. and 4 p.m. on Saturday, September 13, and had checked out before noon on Sunday, September 14. The woman whom Zlogar had gone to visit in Minneapolis testified that she had seen him on a Saturday around the time in question but could not be certain of the date.

The defendant was arrested in St. Louis on December 30, 1969. He was driving Zlogar's car which contained some of the victim's clothing and other personal effects. Defendant was also in possession of Zlogar's credit cards and other personal papers. The State adduced evidence relevant to defendant's activities in September, 1969, the month in which the death had occurred. There was testimony that defendant had signed the register in a motel in Jacksonville, Illinois, on September 9, 1969, as "Frank Henenberg" and that on September 12, 1969, he had identified himself in Davenport, Iowa, as Henenberg. With the aid of handwriting experts, evidence was presented tending to demonstrate that the defendant had purchased gas in Rockford, Illinois, on September 13, 1969, and in Normal, Illinois, on September 14, 1969, using a credit card belonging to Martin Zlogar and signing Zlogar's name to the voucher. There was also testimony that one whose signature was identified as Henenberg's by handwriting analysis checked into the Jacksonville, Illinois, Holiday Inn at 11:55 p.m. on September 14, 1969, stating that he was driving a 1969 Chevrolet, and further evidence that that car which Zlogar drove before his disappearance was also a 1969 Chevrolet. There was evidence that the car Henenberg had previously driven was a 1963 Chevrolet.

The State produced a gun which had been found in a creek near a road between Springfield and Jacksonville, Illinois. The gun was a .32-caliber weapon with four cartridges. Because the lead objects found in the victim's skull were fragmented, there was no positive evidence that the objects which were found in the deceased's skull were from the particular gun placed in evidence. There was testimony, however, that the weight of the fragments was consistent with the weight of a .32-caliber bullet and that the creek weapon was misaligned. There was also expert evidence that the fragments found in the victim's skull and the cartridges found in

the creek weapon had the same chemical composition. However, the chemical expert testified that this composition was not unusual and could be found in other bullets.

David DeClue testified at trial that on September 2, 1969, he and the defendant took a gun from a tavern in St. Louis and drove north to Grafton, Illinois, intending to go to River Falls, Wisconsin, to look up one Jerry Bugbee with the intention of committing some burglaries. On September 3, DeClue said he sold the gun to the defendant, bought a used car and returned to St. Louis. DeClue next saw defendant on September 16 or 17 in St. Louis and testified that defendant told him he had thrown the gun away. Jerry Bugbee and Sandra Bugbee, his wife, testified that defendant arrived unexpectedly at their home in River Falls, Wisconsin, on the morning of September 4, 1969, and that he was with one or both of them between September 4 and September 9, except for the night of Saturday, September 6 and the morning of Sunday, September 7. He was next seen by the Bugbees on September 12 in River Falls, Wisconsin. The Bugbees testified that defendant had a gun when he arrived at their home on the 4th and had the same gun during his brief visit on the 12th of September.

Dr. Stein, who performed the autopsy on the victim, testified that there was a large round hole in the victim's skull and nearby a smaller irregularly shaped hole. One large and one small lead fragment were found in the victim's skull. It was his present opinion that the smaller hole was formed by a shearing of a missile due, "in all probability to a badly aligned barrel and cylinder." It appeared, however, that Dr. Stein had testified at the original trial that he believed that the two holes were caused by a single bullet which had entered the skull ricocheting inside it with a fragment flickering and forming the small irregular hole. He said that he had changed his opinion in 1970 or 1972 but had not advised the State's Attorney although he had stated the change to pathology students in lectures.

Prior to trial defense counsel filed a motion requesting that the prosecution be barred from using evidence or making any comment relating to the prior criminal record or activities of the defendant which were not related to the murder of Martin Zlogar. As particularly relevant here, defense counsel moved to exclude any testimony by Jerry Bugbee and David DeClue which would indicate each had known Frank Henenberg in prisons at previous times. The trial court denied the motion. At the trial David DeClue was asked by the State's Attorney where he had met defendant and over objection stated he had met him at a State penitentiary in Missouri; that he had known Henenberg for about 16 years; and that he, DeClue, had spent 14 years in State and Federal

prisons for burglary and car theft and was last in prison in 1968. Bugbee was also asked when he first met Frank Henenberg, and he answered, "1966, in the Arkansas penitentiary." Defense counsel objected, and the court overruled the objection. Thereafter Bugbee stated that he was serving a 3-year term for grand larceny in the Arkansas penitentiary and had spent approximately 4 or 5 years in Federal or State penitentiaries.

■■ Defendant contends that permitting his two friends, who had seen him during the first part of September, 1969, to state that they had met him in penitentiaries at two separate times 10 years apart gave the jury the impression that defendant had a propensity to commit crimes and destroyed his presumption of innocence. The State responds that the testimony of Bugbee and DeClue was independently relevant to the issues in the case and that, in any event, the error would be harmless beyond a reasonable doubt.

Defendant first argues that the court should have ordered the State's witnesses DeClue and Bugbee to avoid testifying that they had met defendant previously in penitentiaries in accordance with defendant's pretrial motion. He further argues that the court's failure to sustain his objection to the answers at trial and to instruct the jury to disregard the answers compounded the prejudicial error and deprived him of a fair trial.

The State responds that the testimony of the witnesses was introduced for the relevant purposes of showing that defendant was going to Wisconsin with intention to commit burglaries, of identifying the gun which the State sought to establish as the murder weapon, and of establishing that defendant had a different car after the murder. It is argued that the relatively small amount of the testimony which indicated that the witnesses had met defendant while they were in the penitentiary was part of the continuing narrative to show why defendant came to them in particular to inquire whether they wanted to commit burglaries in Wisconsin. The State maintains that if the court's ruling was error at all it was harmless beyond a reasonable doubt.

Generally, evidence of other offenses may be admissible if relevant for any purpose other than to show a mere propensity on the part of the defendant to commit the crime charged. (*People v. Cole*, 29 Ill. 2d 501, 503 (1963).) We have held that the actual need for the evidence, even though relevant, must be considered in the light of the issues and the other evidence available to the prosecution and must be balanced against the prejudicial effect of its admission upon the jury. (See *People v. Butler*, 31 Ill. App. 3d 78, 80 (1975).) Even though the testimony does not charge the defendant directly with the commission of another crime, it may also be error to admit evidence which suggests prior unspecified criminality of the defendant. See *People v. Williams*, 72 Ill. App. 2d 96 (1966); *People v.*

*Colston*, 81 Ill. App. 2d 75 (1967); *People v. Pitts*, 1 Ill. App. 3d 120 (1971); *People v. Hawkins*, 4 Ill. App. 3d 471 (1972); *People v. Hudson*, 7 Ill. App. 3d 333 (1972); *People v. Smith*, 12 Ill. App. 3d 295 (1973).

■■ In the circumstances before us whether defendant became acquainted with the witnesses in the penitentiary does not appear to have independent relevance to the issues involved in the crimes of murder and armed robbery charged against the defendant. Nor can we agree with the State's contention that the answers were a necessary part of the witnesses' narratives. Their testimony, insofar as it related to the proof of circumstances tending to prove defendant guilty of the crimes charged, would have been complete without the reference to the meetings in the penitentiaries. We, therefore, conclude that the trial judge erred in permitting the testimony as to the meetings in the penitentiary which could have fairly suggested to the jury that defendant had some prior criminal background.

We further conclude, however, that when the references are considered in the context of the whole record, the admission of the testimony was "harmless beyond a reasonable doubt" within the standards of *Chapman v. State of California*, 386 U.S. 18, 24, 17 L. Ed. 2d 705, 711, 87 S. Ct. 824, 828 (1967).

A reference to prior criminality may not require reversal in all circumstances. See *People v. Wilson*, 51 Ill. 2d 302, 308 (1972); *People v. Delgado*, 30 Ill. App. 3d 890, 894 (1975); *People v. Bartels*, 30 Ill. App. 3d 551, 554-55 (1975). See also *United States v. Plante*, 472 F. 2d 829, 832 (1st Cir. 1973); *Commonwealth v. Vanetzian*, 215 N.E.2d 658, 661 (Mass. 1966); *Brown v. State*, 258 Ind. 412, 281 N.E.2d 801, 802 (1972).

■■ The application of the "harmless error" rule requires an assessment based on a reading of the record of the probable impact of the erroneously admitted evidence on the minds of the average jury. (See *Schneble v. Florida*, 405 U.S. 427, 432, 31 L. Ed. 2d 340, 345, 92 S. Ct. 1056, 1059-60 (1972).) In *Schneble*, the majority stated:

> " '[a] defendant is entitled to a fair trial but not a perfect one.' 391 U.S. at 135, quoting *Lutwak v. United States*, 344 U.S. 604, 619 (1953). Thus, unless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required. See *Chapman v. California*, 386 U.S. 18, 24 (1967). In this case, we conclude that the 'minds of an average jury' would not have found the State's case significantly less persuasive had the testimony as to Snell's admissions been excluded. The admission into evidence of these statements, therefore, was at most harmless error."

See also *People v. Tranowski*, 20 Ill. 2d 11, 17 (1960).

On this record we have considered the fact that the witness DeClue testified in detail and without objection that defendant had talked to him in 1969 about getting a gun from a tavern which was to be used by both the witness and the defendant in a robbery, that they spoke of going to see a friend of the defendant's named Bugbee in Wisconsin and that defendant told the witness that they had some places up there to line up for burglaries. The witness Bugbee also testified in detail and without objection that defendant asked him to "pull some jobs"; and had also shown him a gun and admitted that he had shot a man he was in prison with in St. Louis. This testimony, which was not objected to, would even more directly persuade jury of defendant's prior criminality than the references in the preliminary questioning of the witnesses, and the additional prejudicial effect of those references would have been minimal. The references were briefly made and not further alluded to at any time in the course of a lengthy trial. They were somewhat ambiguous and did not require an inference to be drawn that defendant had committed a distinct substantive offense similar to the crimes with which he was charged which would more certainly lead the jury to conclude that he therefore had the propensity to commit these particular crimes. Further, the evidence of guilt was substantial and defendant has, in fact, not claimed in this appeal that he was not proven guilty beyond a reasonable doubt based on a sufficiency of the evidence. See *People v. Rivera*, 7 Ill. App. 3d 983, 986-87 (1972).

Defendant next argues that he was deprived of a fair trial because the court denied his motion for a continuance during the course of the trial. He claims that he was taken by surprise when Dr. Stein, the pathologist who performed the autopsy on the decedent, testified that two holes in the victim's skull were formed by a missile which had fragmented prior to entry due, in all probability, to a badly aligned barrel and cylinder. This was a change from his testimony at the first trial when his opinion had been that the deceased was struck with a single bullet which ricocheted inside the skull and "perhaps" a fragment flickered and formed the second hole. The doctor testified that he had changed his opinion shortly after the first trial but that he had not told the State's Attorney of the change. Dr. Stein had testified on Monday, February 11. Tuesday, February 12 was a holiday with no trial proceedings because of Lincoln's birthday. On Wednesday, February 13, defense counsel requested that a second pathologist be appointed to examine the skull and to give his opinion concerning the nature of the two holes. He also requested a continuance so that he could have the gun submitted for tests to determine whether a cartridge fired from it could fragment before impact. He also requested that the ballistics' witness of the State be recalled for further cross-examination to determine whether her tests had

indicated that a bullet fired from the gun would fragment. The trial court denied all three motions, but the defendant has claimed error only as to the refusal to grant a continuance and to permit further cross-examination of the State's ballistics expert.

Section 114—4 of the Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, par. 114—4) is addressed primarily to pretrial motions for continuances. As material here it also provides, that:

> "(e) All motions for continuance are addressed to the discretion of the trial court and shall be considered in the light of the diligence shown on the part of the movant.
>
> (f) After trial has begun a reasonably brief continuance may be granted to either side in the interests of justice."

Whether a continuance should be granted rests within the sound judicial discretion of the trial court. (See *People v. Canaday*, 49 Ill. 2d 416, 427 (1971).):

> "[i]t cannot be said that a motion for continuance has been improperly denied, unless it appears that the refusal to grant additional time has in some way embarrassed the accused in the preparation of his defense and thereby prejudiced him. (*People v. Coleman*, 45 Ill. 2d 466, 469.)"

The motion is also to be considered in the light of the diligence shown by the defendant. See *People v. Jefferson*, 35 Ill. App. 3d 424, 426, 342 N.E.2d 185, 186 (1976).

The inquiry into whether the refusal to grant additional time to the defendant embarrassed the accused in the preparation of his defense addresses the materiality of the evidence sought to be contradicted as it bears on defendant's guilt or innocence. Defendant argues that the identification of the gun by the State's witnesses was not sufficiently positive to establish a link between the defendant and the gun found in Sangamon Creek. Therefore, he contends that the testimony of the ballistics expert that the gun was misaligned, together with the surprise testimony of the pathologist as to the second hole being caused by a fragmentation from a misaligned gun, appreciably narrowed the range of possible weapons to a gun which was misaligned and made the determination of the extent of misalignment and the effect of it very material to his defense. Though the State concedes that the question is relevant, it denies that it had any great materiality on the issue of defendant's guilt or innocence. We are inclined to agree. Although there was substantial evidence identifying the Sangamon County gun as similar to one which defendant had in his possession prior to the crime, the testimony did not establish with certainty that it was the murder weapon. But neither did the changed testimony of Dr. Stein, which related to a medical opinion and not to a ballistics opinion, show with certainty that

the weapon which had been found was the murder weapon. The facts bearing on the weapon, moreover, were but one factor in the strong chain of circumstances which reflected on defendant's guilt.

Further, it is impossible to determine whether the defendant could have procured testimony to counter the medical opinion of Dr. Stein even if the continuance had been granted. He made no offer of proof at trial nor was this issue, or any other, presented in the general, oral, post-trial motion. Further, defense counsel did not attempt to effectively cross-examine Dr. Stein relative to the change in his opinion.

■■ The judge could also find, as he did, that the lack of diligence by defendant precluded his right to a continuance. The defense had access to the gun for a long period of time prior to the present trial, and there is no showing that he was deprived of an opportunity to secure ballistics evidence on his own behalf. There was a period of time of approximately 4 years between the first trial of the defendant and this trial. Defense counsel's failure to make any inquiry of the doctor in the period prior to the present trial demonstrates a lack of diligence. We conclude that the trial court did not abuse its discretion in denying defendant's motion for a trial continuance.

■■ We reach a similar conclusion as to the trial court's denial of defendant's motion to recall the State's ballistics expert for further cross-examination following Dr. Stein's testimony. This is a matter particularly within the trial court's sound discretion (see *People v. Nugara*, 39 Ill. 2d 482, 487-88 (1968); *People v. Halteman*, 10 Ill. 2d 74, 86 (1956)), which we do not find to have been abused.

■■ The defendant finally urges that, in any event, the court erred in entering judgments of conviction and sentences of concurrent terms for the offenses of murder and armed robbery which he alleges arose from the same conduct. We disagree. It should first be understood that we are dealing with concurrent rather than consecutive sentences. The fact that two offenses are against the same victim and occur in a series of acts committed at the same place within a short time does not preclude a finding that they are separate offenses for which concurrent sentences may be imposed. (See *People v. Harper*, 50 Ill. 2d 296, 302 (1972).) Where offenses are committed in the course of the same transaction but involve conduct which is clearly divisible, more than one sentence may be imposed. (*People v. Moore*, 51 Ill. 2d 79, 88 (1972).) Separate convictions and separate sentences for armed robbery and felony murder may be proper in situations where the two offenses arise from a series of closely related acts if the crimes are clearly distinct and require different elements of proof. *People v. Green*, 62 Ill. 2d 146, 148 (1975).

■■ On this record, the circumstances must fairly lead to the conclusion that although the armed robbery and the felony murder

involved one victim and both offenses probably occurred at one place and within a short period of time, they were clearly distinct crimes involving separate acts with different elements of proof. The trial court therefore did not err in imposing concurrent sentences for armed robbery and murder.

The judgment of the trial court is affirmed.

Affirmed.

GUILD, P. J., and HALLETT, J., concur.