THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* VIDAL RIVERA, Defendant-Appellant.

First District (5th Division)   No. 77-1026

Opinion filed July 7, 1978.

Ralph Ruebner and Andrew Berman, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Joan S. Cherry, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial, defendant was found guilty of aggravated battery (Ill. Rev. Stat. 1977, ch. 38, par. 12—4) and sentenced to a term of three to nine years. On appeal he contends that he was denied a fair trial where the prosecutor implied in closing argument that defendant's prior conviction was evidence of guilt in the present case.

At trial the following pertinent facts were adduced.

*For the State*

*Eugenio Berrones*

At approximately 5 p.m. on April 22, 1976, he drove to the Kentucky Fried Chicken restaurant at 2335 W. Fullerton Avenue, Chicago, Illinois, accompanied by his 11-year-old daughter, Julia, and his common-law wife, Gladys Adams. He entered the restaurant's parking lot from Fullerton Avenue via the only entrance and parked. Julia went into the restaurant to buy chicken, and when she returned they were ready to

leave. After backing his car out of his parking space, he noticed that another car "that was coming in stayed in the blocking position at the entrance." Although he "honked" to signal the car to move, the driver ignored the signal and instead went into the restaurant. He then went into the restaurant to ask the driver to move the car. The driver did not answer his first request. After the third request to move the car, the driver answered, "Son of a bitch, don't worry me. I am going out to move the car." The driver then left the restaurant and walked toward the car. Berrones followed him four or five feet behind. He observed the driver putting his right hand in his pocket. Thinking the driver was reaching for a key, he continued to walk until he was next to him. At that point the driver "turned around and he cut me" in the face. Berrones hit him in the face and a struggle ensued in which the driver "was able to cut me about an inch and a half in my stomach." The police arrived about a minute later, halted the fight and took Berrones to St. Elizabeth's Hospital where he was admitted with wounds to the face, stomach and right arm. He did not strike his assailant prior to being cut in the face and was not carrying a weapon. He identified the driver as the defendant, Vidal Rivera.

On cross-examination Berrones admitted that he continued to punch and kick Rivera after being cut and that the police had to pull him away from the fight. Although he stated he entered the restaurant about a minute after defendant, he did recall testifying at a preliminary hearing that he waited "five or ten minutes" before following defendant. He denied losing his temper and pushing defendant prior to being cut. The police did not question him or his wife concerning the occurrence.

### Gladys Adams

She is the common-law wife of Eugenio Berrones. She substantially corroborated the testimony of Eugenio Berrones. As her husband started to pull out of the parking lot to return home, another car "pulled up and blocked him." The other car was pulling into the parking lot and was "a little off the street." Berrones honked the horn for the other car to move, but the driver "just got out of the car and went in the restaurant." Her husband also left his car and went into the restaurant. She identified the defendant as the driver of the other car. She observed the defendant exit the restaurant followed by Berrones. The defendant put his hand into his pocket, turned around, and cut Berrones in the face. She did not, however, see a knife. Berrones then hit the defendant and held his hand. She was in the front seat of the Berrones' automobile during this occurrence.

On cross-examination she admitted that a police officer had to pull Berrones off the defendant. Although there was "blood all over everything," she did not see any on the defendant's face.

*William Ryan, Chicago Police Officer*

On April 22, 1976, he was driving on patrol on Fullerton Avenue at approximately Western Avenue and was accompanied by Officer Christopher Pilafas. When at the intersection of Fullerton Avenue and Western Avenue he observed two men fighting in the parking lot of a Kentucky Fried Chicken restaurant. Approaching the parking lot, he observed two automobiles blocking the entrance. He and Pilafas exited the patrol car and separated the men who were fighting. He identified the defendant as the man he pulled away from Berrones. Defendant placed the knife which he was holding on the trunk of Berrones' car and was taken into custody. He observed that defendant had a "slight bruise on the left cheek just below the eye."

At the police station defendant admitted that he drew a knife during a fight over a parking space and also said that Berrones claimed, "I have got one, too." Defendant then stated that "I slapped him across the face and I should have killed him and I would do it again." Defendant identified a knife which was on the table in the review room at the police station as his and demonstrated how he would slash with the knife "cupped in his hand, between the fingers." However, on cross-examination Officer Ryan admitted that he did not record this demonstration when he made out his police report. Nor did he record defendant's statement that Berrones struck the first blow.

*Christopher Pilafas, Chicago Police Officer*

He substantially corroborated the testimony of Officer Ryan adding that at the police station defendant admitted to the fight by stating, "I stabbed him with the knife because he is bigger than I am. I fight to win. I didn't want to lose." Defendant also said, "I should have killed him." On cross-examination Pilafas stated that he did not remember seeing any blood coming from defendant's nose or mouth. He admitted that he did not examine as to whether defendant was bleeding inside the mouth or nose.

*Doctor Heralenne*

He is a medical doctor employed primarily in the emergency rooms of St. Elizabeth's Hospital and St. Anne's Hospital. He examined Eugenio Berrones at approximately 5:15 p.m. on April 22, 1976, in the emergency room of St. Elizabeth's Hospital. He discovered wounds on the face and left wrist and just below the left rib cage. Berrones was admitted for surgery.

*For the Defendant*
*Joe Jewell*

He was the manager of the Kentucky Fried Chicken restaurant at 2335

W. Fullerton. At approximately 5 p.m. on April 22, 1976, while he was working behind the counter, he observed two men arguing in the restaurant. Although the men were loud enough for him to notice, he could not hear what they were saying. The two men left the restaurant and proceeded into the parking lot where they engaged each other in a fist fight, striking each other several times. In the middle of the fight he observed "one guy bleeding like all of a sudden." The fight had lasted about "two to four minutes" when the police arrived and halted it. He identified the defendant Rivera as one of the men engaged in the fight and stated that after the fight Rivera "looked okay to me." On cross-examination he admitted that he did not see the beginning of the fight.

### Defendant Vidal Rivera on his own behalf

On April 22, 1976, he was driving east on Fullerton Avenue and turned south into the parking lot of a chicken restaurant. As he attempted to drive into the lot, "another man came up and blocked me off." His car was blocking the sidewalk and was a few inches into the street. He waited a minute and honked his horn several times. The other car did not move so he left his car and went into the restaurant. The man from the other car entered the restaurant and began arguing with him. He suggested to the other man that "we talk outside." The man followed him out of the restaurant and pushed him "a couple of times." He intended to phone the police from a nearby gas station, but when he reached his car the other man pushed him against the car and hit him "three, four, five times. I don't really know how many times." When he next pulled out a small knife, the other man stated, "I got one, too" and started kicking him and trying to punch him again. He then swung his right hand at the other man and "kicked back." The police arrived and pushed the other man "off the top of me." He then held the knife out in his opened hand and said, "here." The police officer "got so excited" and said "drop it." He then placed the knife on top of the car. The police then handcuffed him and took him to the police station. He stated that at the police station he "was bleeding to my mouth, through my nose" and that "both my eyes hurt." He further stated that he "had some scratch behind my ears." He was "upset" at the station.

On direct examination the following exchange occurred:

"DEFENDANT'S COUNSEL: Mr. Rivera, I want to direct your attention back to November 15, 1973. Were you—was there a conviction on you back in '73 in case No. 73-1099? Was there a conviction, sir.

DEFENDANT: Yes, sir.

DEFENDANT'S COUNSEL: Mr. Rivera, that was an aggravated battery and did you have a trial in that case?

DEFENDANT: No, sir.

DEFENDANT'S COUNSEL: You pleaded guilty?

DEFENDANT: Yes."

He pleaded guilty because "they offered me a year and a day," and he had "run out of money to pay a lawyer."

On cross-examination he denied that he showed the police how he held or used the knife and further denied ever telling the police he cut Berrones.

The following exchange also occurred on cross-examination:

"STATE'S ATTORNEY: November 15, 1973, you pleaded guilty to a charge of aggravated battery; is that correct?

DEFENDANT: Yes.

\* \* \*

STATE'S ATTORNEY: You didn't plead guilty because you committed that crime?

DEFENDANT'S COUNSEL: I will object. He is not on trial for anything else except this case.

THE COURT: Objection overruled.

DEFENDANT: I never said that I don't do it."

The jury found the defendant guilty on three counts of aggravated battery and not guilty on one count of attempt murder.

Opinion

Defendant contends he was denied a fair trial where the prosecutor implied in closing argument that defendant's prior conviction for aggravated battery was evidence of guilt in the present case.

■■■ The State initially argues that defendant waived this contention by failing to include it in his written motion for a new trial. Although the failure to raise an issue in a written motion for a new trial generally constitutes a waiver of the issue (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856), we do not believe the defendant waived the issue here. In his motion for a new trial defendant alleged that the State's Attorney's "prejudicial inflamatory and erroneous statements in closing argument" denied him a fair trial. We believe the defendant's motion for a new trial contains "sufficient particularity to afford the trial court identity of the error relied upon." *Osborne v. Leonard* (1968), 99 Ill. App. 2d 391, 396, 240 N.E.2d 769, 771.

On direct examination defendant admitted that he had previously been convicted of aggravated battery. During the State's closing argument the following exchange occurred:

"STATE'S ATTORNEY: Look at the issues, Ladies and Gentlemen, of attempt murder, and look at the stories that the defendant came up with at the police station.

Now, the first story—and put yourselves in his position. The man

has been around. He has been to prison before for aggravated battery.

DEFENDANT'S COUNSEL: I object to that comment.

STATE'S ATTORNEY: He was under arrest.

DEFENDANT'S COUNSEL: Judge, I ask it be stricken and the Jury to disregard it.

STATE'S ATTORNEY: Your Honor.

THE COURT: You may continue with the facts."

■■■ Defendant argues that the prosecutor implied by these comments that defendant was guilty of the present charge by reason of his previous sentence for aggravated battery. However, evidence concerning the prior conviction was introduced by the defendant himself on direct examination. Defendant's counsel deliberately questioned defendant about the prior conviction. It is clear that "[t]he State may comment on the fact that the accused had been indicted or convicted of crimes other than that for which he is on trial [citations], where evidence supporting the particular reference is properly before the jury." (*People v. Ford* (1975), 34 Ill. App. 3d 79, 85-86, 339 N.E.2d 293, 299.) Where, as here, the defendant himself refers to his former conviction during direct examination, reference by the State to that former conviction during closing argument is not improper. (*People v. Kelly* (1975), 25 Ill. App. 3d 753, 324 N.E.2d 82.) The jury, moreover, was instructed by the trial court that evidence of defendant's prior conviction could be considered only as reflecting upon defendant's credibility as a witness, rather than as evidence of his guilt in the present case.

■■ Furthermore, even if we believed that defendant's contention had merit, we would still affirm his conviction since the error, if any, was harmless beyond a reasonable doubt insofar as the jury's determination of guilt is concerned. (*People v. Henenberg* (1976), 37 Ill. App. 3d 464, 346 N.E.2d 11.) Here, the record indicates overwhelming evidence of the defendant's guilt. Berrones and his wife testified that defendant acted without provocation in striking Berrones. Defendant testified that he acted in self-defense. The jury was instructed on self-defense, but chose not to accept the defense. Even if the prosecutor's comments had been improper, which they were not, they did not affect the outcome of this case. We believe the verdict would have been the same even if the prosecutor had not commented upon defendant's previous conviction.

Following the filing of briefs in this matter, the defendant moved for a substitution of attorneys by sending to the court an unsolicited petition in letter form. Although the defendant stated therein that he had additional issues to raise on appeal, he did not set forth any of those issues. We requested the State Appellate Defender, counsel for the defendant, to respond to defendant's motion for a substitution of attorneys. Following

408

the State Appellate Defender's response and our independent review of the entire record, we are satisfied that there were no other meritorious issues to be considered in the review of defendant's conviction. Therefore, defendant's motion for substitution of attorneys is denied.

For the foregoing reasons the judgment of the circuit court is affirmed.

Motion denied; judgment affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.