THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES SMYLIE, Defendant-Appellant.

First District (2nd Division)    No. 80-1633

Opinion filed December 29, 1981.—Rehearing denied January 26, 1982.

Ralph Ruebner, Steve Clark, and Barbara Kamm, all of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Kevin Sweeney, and Richard J. Cosentino, Assistant State's Attorneys, of counsel), for the People.

JUSTICE STAMOS delivered the opinion of the court:

James Smylie was charged by information with the murder of Lawrence Sanders. After a jury trial, Smylie was found guilty of murder and sentenced to 25 years in the Illinois Department of Corrections. Defendant appeals, asserting: (1) he was denied a fair trial by the trial court's limitation of defense counsel's cross-examination of two police officers; (2) he was denied due process and a fair trial by the State's improper closing argument; (3) he was denied a fair trial when the trial court admitted into evidence a number of prejudicial photographs of the decedent; and (4) he was not proved guilty beyond a reasonable doubt.

On August 17, 1978, at about 4 a.m., a Harvey police officer responded to a radio dispatch to investigate the area of 158th Street and Lincoln Avenue for a man face down in the street. The officer found the body of Lawrence Sanders, who had been shot four times at close range. The State's evidence was as follows.

Detective McCarthy of the Harvey police department interviewed the decedent's girlfriend, Peggy Price, at her home on the evening of August 17, 1978. She said that at 1 a.m. on August 17, she was sleeping with the decedent when defendant knocked on the door and said he wished to talk to the decedent. The decedent was awakened and after some coaxing by defendant, went for a ride with defendant in the latter's car. Price testified that she recognized defendant's voice and appearance from the two or three times she had met him previously. She also testified that she heard defendant tell the decedent that he needed the $60 owed him. When she looked out the window of the apartment as the man left, Price saw the decedent get into the car with defendant. McCarthy, along with Detective Thomas Morrison and others, went to defendant's house and were told defendant wasn't there. They then went to defendant's brother's house. A man answered and identified himself as James Smylie. He was arrested and taken to the Harvey Police Station. At the station, the man told the officers he was John Smylie, not James Smylie, and said he told them he was James because there were arrest warrants for traffic violations issued against him (John) in Chicago. McCarthy left the station but returned when he was informed that defendant had come to the police station to turn himself in for the murder of Lawrence Sanders.

Officer Rizzi, who was working the front desk of the police station

when defendant arrived, testified that defendant came in and said they were "holding the wrong guy" and that "he was there to give himself up" for killing Sanders. Morrison testified that defendant was given his rights and that defendant filled out a constitutional rights form acknowledging that he understood his rights. Defendant then gave an oral statement confessing to the killing of Sanders.

When he was asked to complete a written statement, defendant began but said he was too nervous to write and asked Morrison to write it out for him. Morrison said he couldn't do that but said he would have it typed. Detective McCarthy, with defendant present, dictated a statement to Phyllis Egelbrecht, a civilian typist, who typed it on a statement form. Defendant read the statement and signed it. Morrison denied asking defendant to take a paraffin test.

During cross-examination, defense counsel attempted to question Morrison concerning the information he received from Peggy Price. The State objected on the ground that such testimony was hearsay. Defense counsel responded that the testimony was not hearsay since it would not be used to prove the truth of the matter asserted. Defense counsel said it would be used to show that the police had sufficient information to fabricate defendant's alleged confession. The trial court ruled that the testimony was irrelevant and immaterial to the issue of the voluntariness of the confession.

Defendant offered the following evidence in his case-in-chief. A stipulation was read stating that if called to testify, Michael Schaeffer, a toxicologist, would say that he tested specimens of decedent's blood, urine and bile and did not detect the presence of alcohol. Defendant argues that this proves the confession was fabricated since it states that defendant and the decedent went for "a few drinks" prior to the shooting. Jimmy Cole, who lived with defendant's mother, testified that defendant was in his mother's house at midnight on the morning of the killing. Defendant's wife testified that she and defendant went to bed between 11 and 12 on the night of August 16 and that defendant did not leave the house anytime that night. Defendant's brother Gregory testified that he and defendant went to the Harvey police station to bail out their brother John and that defendant never said he was there to turn himself in. Jerry Robinson, who had known the decedent for about six months, testified that he went to pick decedent up on the night of August 16. Robinson said he was accompanied by another friend, James Walker, who waited in the car while Robinson went to get decedent. Decedent went with the two men to a bar in Harvey. They became separated and Robinson and Walker left when they couldn't locate decedent.

Robert Beseth, a private investigator hired by defense counsel, testified that he interviewed Peggy Price at her apartment on September

25, 1979, and again on February 10, 1980. At the latter meeting Beseth was accompanied by defense counsel and Jerry Robinson. Beseth testified that Price told them that Robinson resembled defendant to the extent that the two could have been brothers and that Robinson could have been the man who picked up the decedent the night he was killed. According to Beseth, who said he did not take notes during the interviews but instead composed reports a short time thereafter, Price told him that the man who picked up Sanders remained in the hallway and that she saw the decedent leave the apartment and enter what appeared to be a blue Cadillac. This account conflicted with Price's testimony that Beseth took notes during the interview on February 10 and that he never asked her if Robinson looked like defendant or if Robinson could have been the man who picked up the decedent in the early morning of August 17, 1978. Price also denied telling Beseth that the man who picked up the decedent remained in the hallway and denied saying that the decedent left in a blue Cadillac.

Defendant testified on his own behalf and corroborated the testimony of the other defense witnesses. He stated that he never went to see the decedent on the night in question, that he went to the police station to bail his brother out of jail and not to turn himself in, and that he did not shoot Lawrence Sanders. He further testified that while in custody, he was told by Detective McCarthy to press his hands on seven sheets of paper to test if he had fired a gun within the last three days. One of these sheets was attached to a clipboard and had some writing on the top. Defendant signed this sheet at McCarthy's insistence. Defendant stated that the sheet of paper bearing his alleged confession was blank when he signed it.

During rebuttal, Detective McCarthy testified that he interviewed defendant on the morning of August 18. Also present at that time were Detective Morrison and the secretary, Phyllis Egelbrecht. Defendant asked Morrison to write out the statement. Morrison said he couldn't but would have it typed by Egelbrecht. The completed statement was read to defendant, who said it was correct and signed it. Morrison and McCarthy, who both denied using a clipboard, signed the statement as witnesses. The portion of defense counsel's cross-examination of McCarthy dealing with information he had gathered prior to the confession was limited because the trial judge ruled it went beyond the scope of the direct examination. Phyllis Egelbrecht testified and corroborated McCarthy's testimony and said there were no signatures on the bottom of the statement form when she typed it.

The case was submitted to the jury, which returned a verdict of guilty on the charge of murder. Defendant's motion for a new trial was denied, and defendant was sentenced to 25 years in prison.

Defendant's first contention on appeal is that he was denied a fair trial

by the trial court's limitation of defense counsel's cross-examination of Detectives Morrison and McCarthy. This, defendant urges, prevented him from presenting his theory that the confession was manufactured by the police. Specifically, defendant endeavored to show that after interviewing Peggy Price, the police had sufficient information to fabricate the alleged confession. According to defendant's theory, the police had him place his hand on a sheet of paper for the stated purpose of testing if he had fired a gun within the last three days. This piece of paper was attached to a clipboard and had some printing on the top which was covered by the clip portion of the clipboard. Pursuant to instructions by the police, defendant signed the bottom of the paper. The police later typed a confession in the space where defendant had placed his hand. We note that defendant never mentioned the fact that the confession was · typed on a form that had printing at both the top *and* the bottom of the sheet. The printing on the bottom of the sheet read: "I have read the above statement consisting of ___ pages and attest that it is a true and accurate account of the events which took place on _____. It was given by me freely and voluntarily, without fear of threat or promise of reward." Following this printing was space for the signatures of the person making the statement and two witnesses. During the cross-examination of Detectives Morrison and McCarthy, defense counsel attempted to elicit what they were told by Peggy Price. The State's objections during cross-examination of Morrison were sustained on the ground that such testimony was irrelevant and immaterial to the issue of voluntariness of the confession. The State's objections during cross-examination of McCarthy were sustained because the questioning went beyond the scope of the direct examination.

■■ ■ The scope of cross-examination in a criminal case rests largely within the discretion of the trial court and its decision will not be disturbed unless there has been an abuse of discretion which has prejudiced the defendant. (*People v. McElroy* (1980), 81 Ill. App. 3d 1067, 1072, 401 N.E.2d 1069.) Irrelevant evidence which would only serve to confuse or mislead the jury may properly be excluded without violating defendant's right to confront witnesses. (*McElroy*, at 1072.) However, the accused in a criminal prosecution should be given wide latitude in cross-examining State's witnesses, and the examiner should be allowed to develop all circumstances tending to explain, qualify, or discredit the testimony of an adverse witness. *People v. Gamboa* (1975), 30 Ill. App. 3d 242, 251, 332 N.E.2d 543.

In the case at bar, the trial judge ruled that testimony regarding what the police knew prior to defendant's alleged confession was irrelevant to the central issue, *i.e.*, the voluntariness of the confession. The issue defendant sought to put before the jury, however, was not the voluntari-

ness of the confession but rather its authenticity. In seeking to show that the police had sufficient information to manufacture the confession, defense counsel questioned Officers Morrison and McCarthy about what they learned from Peggy Price prior to the time defendant allegedly made his confession. The cross-examination of Officer McCarthy went well beyond the scope of his testimony on direct examination and was therefore properly limited. Defense counsel should, however, have been permitted to show in his cross-examination of Morrison that, prior to defendant's coming to the police station, the police had enough information to fabricate the confession.

■■■ We find, however, that the error was harmless. Improper limitation of cross-examination warrants reversal only where there has been a clear abuse of discretion and a showing of manifest prejudice to the defendant. (*People v. Halteman* (1956), 10 Ill. 2d 74, 86, 139 N.E.2d 286.) An error in restricting cross-examination may be deemed harmless where the prosecution does not rely solely on the credibility of the witness sought to be cross-examined. (See *People v. Patterson* (1980), 88 Ill. App. 3d 168, 175, 410 N.E.2d 396.) In the case at bar the jury knew that the police had begun their investigation into Sanders' death prior to defendant's coming to the police station. It was also clear that the police interviewed Peggy Price prior to defendant's arrest. In addition, defense counsel made full use of his opportunity in closing argument to argue his theory that the confession was manufactured. We also note that when the State asked Peggy Price whether she told the police that defendant had come to her home and left with decedent, defense counsel's objection was sustained. It would be incongruous to hold that defendant was prejudiced by his inability to elicit information where defense counsel successfully objected to the prosecution's inquiries that in all likelihood would have elicited the same information defendant sought to introduce. See generally *People v. Kalpak* (1957), 10 Ill. 2d 411, 424, 140 N.E.2d 726.

Defendant's next contention is that he was denied due process and a fair trial because of the State's allegedly improper remarks during closing arguments. Defendant claims that he was prejudiced by the prosecution's repeated attacks on defense counsel's character, such as accusing defense counsel of concocting the defense, of suborning perjury and of misleading the jury. Defendant further argues that he was prejudiced when the prosecution misstated the evidence and made reference to defendant's failure to call James Walker as a witness.

Courts have generally held that a defendant's failure to raise an issue in his written motion for a new trial constitutes a waiver of that issue and it cannot be urged as a ground for reversal on appeal. This waiver rule applies to constitutional as well as other issues. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) A post-trial motion that includes only

general allegations is insufficient to properly preserve a matter for review. (See *People v. Goble* (1976), 41 Ill. App. 3d 491, 499, 354 N.E.2d 108 (post-trial motion that raised "such other grounds and each and every error as may appear from the Report of Proceedings" held insufficient to preserve error for review); *People v. Rogers* (1975), 32 Ill. App. 3d 788, 790, 336 N.E.2d 784, (post-trial motion that said defendant "hereby presents any and all errors, and requests relief from this court, or if denied, from the courts on review" did not preserve errors for review since to do so would destroy the rationale behind post-trial motions, *i.e.*, to allow the trial court to correct its own errors).) In a recent appellate court case, allegations in a motion for a new trial that the State's closing arguments were inflammatory, prejudicial, infringed upon defendant's right to counsel and "exhorted the jury to convict the defendant based on matters which [are] dehors the record in violation of the defendant's rights under the Sixth and Fourteenth Amendment" were held insufficient to inform the trial court of the alleged errors and thus waived them for purposes of review. (*People v. Turk* (1981), 101 Ill. App. 3d 522, 428 N.E.2d 510). Nowhere in defendant's post-trial motion is there mention of attacks on defense counsel. The motion is worded in broad, general language without reference to remarks attacking the character of defense counsel. In *People v. Rivera* (1978), 62 Ill. App. 3d 401, 378 N.E.2d 1293, however, a defendant's allegation in his motion for a new trial that he was denied a fair trial because of the assistant State's Attorney's "prejudicial inflammatory [*sic*] and erroneous statements in closing argument" was held sufficient to apprise the trial court of the error relied on. (62 Ill. App. 3d 401, 406.) Without specifically ruling on the sufficiency of defendant's motion for a new trial in the instant case, we will assume that the errors he alleges were not waived.

It is error to charge defense counsel with using improper tactics to defend his client. Such errors exist when the defense is accused of fabricating its case or of suborning perjury. (*People v. Lavoy* (1980), 91 Ill. App. 3d 639, 644, 415 N.E.2d 487.) However, where the prosecution merely charges defense counsel with obscuring the evidence, no reversible error is committed. (*Lavoy*, at 644.) Even improper remarks by the prosecutor do not constitute reversible error unless they result in substantial prejudice to the defendant (*People v. Johnson* (1979), 73 Ill. App. 3d 431, 434, 392 N.E.2d 587), or are a material factor in the defendant's conviction. *People v. Swets* (1962), 24 Ill. 2d 418, 423, 182 N.E.2d 150.

■■ In accusing defense counsel of concocting the defense, the prosecution in the case at bar went beyond the bounds of permissible comment. (See *People v. Gamboa* (1975), 30 Ill. App. 3d 242, 250, 332 N.E.2d 543.) We find, however, that this and the other allegedly improper attacks on defense counsel did not substantially prejudice defendant nor did they

constitute a material factor in his conviction. We therefore decline to grant defendant a new trial. See also *People v. Porter* (1981), 96 Ill. App. 3d 976, 984-87, 422 N.E.2d 213.

■■ We note in this regard that the vast majority of defense counsel's objections to the prosecution's remarks were sustained. The fact that the assistant State's Attorney inexcusably chose to ignore some of the court's admonitions does not change the nature of the error in this case. We also note that defense counsel's argument was clearly more than an attack on the credibility of the State's witnesses; it impliedly included accusations of perjury and the falsifying of evidence. Defense counsel specifically accused the police of being evil, racist and unethical. The prosecutions overzealous behavior is more readily understood in light of defense counsel's argument and theory of the case. See generally *People v. Griggs* (1977), 51 Ill. App. 3d 224, 226, 366 N.E.2d 581.

There is no question that defendant preserved his allegation that it was prejudicial error for the State, in its closing, to attempt to shift the burden of proof to defendant by commenting on defendant's failure to call James Walker as a witness. Walker was the person who, according to Jerry Robinson's testimony, accompanied Robinson when he allegedly picked the decedent up in the early morning of August 17, 1978. The comments relied on by defendant are the prosecution's reference to Walker as an alibi witness who failed to testify and the statement that Walker was not called to testify by the defense "because he wouldn't back up Robinson's statement." An objection to the latter remark was sustained. Defense counsel, however, did not at that time request the trial court to inform the jury not to consider Walker's absence as indicating his testimony would contradict Robinson's.

As with other comments by the prosecution, this reference to defendant's failure to call James Walker, even if improper, does not constitute reversible error unless it results in substantial prejudice to the accused. (See *People v. Nilsson* (1970), 44 Ill. 2d 244, 248, 255 N.E.2d 432, *cert. denied* (1970), 398 U.S. 954, 26 L. Ed. 2d 296, 90 S. Ct. 1881.) In view of the trial court's sustaining of defense counsel's objection, the tangential nature of Walker's potential testimony (see *People v. Beller* (1979), 74 Ill. 2d 514, 526, 386 N.E.2d 857), and the strength of the State's evidence against defendant, we conclude that the remarks were harmless beyond a reasonable doubt. See *People v. Olejniczak* (1979), 73 Ill. App. 3d 112, 123-24, 390 N.E.2d 1339.

We nevertheless feel obligated to point out the conflicting authority in Illinois regarding the propriety of the State's comment on a defendant's failure to call a witness. (See *Nilsson*, at 248, and cases cited therein.) The basic rule, set out in *People v. Munday* (1917), 280 Ill. 32, 117 N.E. 296, is that since the State has the burden of proving the defendant's guilt, it is

improper to imply an argument that the defendant has a duty to produce a witness when that witness is equally accessible to the State. (*Munday*, at 47.) Our supreme court appears to have carved out an exception to the *Munday* rule where the absent witness is an alibi witness. In *People v. Blakes* (1976), 63 Ill. 2d 354, 348 N.E.2d 170, the court found no error in the State's comment on defendant's failure to call alibi witnesses named in defendant's testimony. (See *Blakes*, at 358-60.) In *People v. Beller* (1979), 74 Ill. 2d 514, 386 N.E.2d 857, the court held that a prosecutor's comment on the defendant's failure to call a witness was improper because the witness was not an alibi witness and there was no showing that he was not equally available to both parties. *Beller*, at 526; see also *People v. Smith* (1969), 105 Ill. App. 2d 8, 11-12, 245 N.E.2d 23.

The confusion arises when one considers our supreme court's opinions in *People v. Williams* (1968), 40 Ill. 2d 522, 240 N.E.2d 645, *cert. denied* (1969), 393 U.S. 1123, 22 L. Ed. 2d 129, 89 S. Ct. 1004, and *People v. Blakes* (1976), 63 Ill. 2d 354, 348 N.E.2d 170, which quoted the following from *Williams*:

> " '[A] jury in its deliberations is not limited to a consideration of that which is, strictly speaking, testimony. To the contrary, it may properly consider any facts developed in the trial from which a reasonable inference may be drawn for or against either party. For instance, if it is developed in a trial that a witness exists, presumably under the control of a defendant, who can throw light upon a vital matter, and he is not produced, certainly a jury may fairly consider that fact, and, likewise, counsel would have a legitimate right to comment thereon. * * *
>
> [I]t is our conclusion that though failure to call a witness or produce evidence may not be relied on as substantial proof of the charges, nonetheless, if other evidence tends to prove the guilt of a defendant and he fails to bring in evidence within his control in explanation or refutation, his omission to do so is a circumstance entitled to some weight in the minds of the jury, and, as such, is a legitimate subject of comment by the prosecution.' " (*Blakes*, at 359-60, quoting *Williams*, at 528-29.)

It is true that *Williams* involved the defendant's failure to produce certain physical evidence and the witnesses in *Blakes* were, in fact, alibi witnesses. The logic of the court's opinion, however, is not so limited. (See also *People v. Lion* (1957), 10 Ill. 2d 208, 216, 139 N.E.2d 757.) In *People v. Pepper* (1971), 2 Ill. App. 3d 621, 276 N.E.2d 416, the appellate court attempted to distinguish *Williams*, noting that the supreme court there concerned itself with the question of self-incrimination and the right of a defendant to testify. (*Pepper*, at 624.) In our opinion, this distinction ignores the plain language in *Williams* that the prosecution may comment,

although not rely, on the defendant's failure to produce evidence within his control to explain or refute the prosecution's evidence. In view of these differing views on the propriety of prosecutorial comment on a defendant's failure to produce a witness or an item of physical evidence, the confusion of the bar, particularly prosecuting attorneys, is understandable.

■■■ Defendant's next contention is that he was denied a fair trial when the trial court improperly admitted into evidence numerous inflammatory photographs of decedent's body. Defendant argues that the gruesome photographs prejudiced defendant and had little probative value. The admission of photographs of a murder victim is a matter reserved to the sound discretion of the trial court. (*People v. Myers* (1966), 35 Ill. 2d 311, 331, 220 N.E.2d 297.) Even gruesome photographs are admissible when they are relevant and establish some fact in issue. (See *People v. Owens* (1976), 65 Ill. 2d 83, 90, 357 N.E.2d 465, *cert. denied* (1977), 430 U.S. 955, 51 L. Ed. 2d 805, 97 S. Ct. 1600; *People v. Henenberg* (1973), 55 Ill. 2d 5, 13-14, 302 N.E.2d 27.) In *People v. Lindgren* (1980), 79 Ill. 2d 129, 143-44, 402 N.E.2d 238, our supreme court held that it was not an abuse of discretion to admit two photographs showing a victim whose genitals had been severed and placed in his mouth. The court in that case ruled that such photographs were probative of the cause of death, the amount of force used in the murder, the condition of the scene of the crime, and tended to corroborate the testimony of the pathologist, the coroner and several other witnesses. Likewise, in *People v. Gerecke* (1977), 45 Ill. App. 3d 510, 359 N.E.2d 1178, the court held that the two color photographs of the victim taken at the murder scene and three color photographs taken at the morgue were properly admitted because they were relevant to prove the cause of death and the identity of the victim. The court also held that the pictures were not unnecessarily cumulative even though there was oral testimony concerning the same issues. (45 Ill. App. 3d 510, 514.) In the case at bar, the photographs of the victim's bullet-ridden body were relevant to prove the cause of death, the identity of the victim and to corroborate the portion of the confession stating that "[I] emptied my piece" into Sanders. We find it was not an abuse of discretion for the trial court to admit these photographs.

■■ Defendant's final contention on appeal is that he was not proved guilty beyond a reasonable doubt. Defendant's position at trial and on appeal is that the written confession introduced at trial and the oral confessions testified to by Rizzi, Morrison, McCarthy and Egelbrecht were fabricated. Defendant also asserts that Peggy Price erroneously identified him as the man who picked decedent up a few hours prior to decedent's death. The standard of review we are bound to is that a conviction will not be reversed on appeal unless the evidence presented is

so improbable or so palpably contrary to the verdict as to raise a reasonable doubt of guilt. (*People v. Lewis* (1979), 75 Ill. App. 3d 259, 281, 393 N.E.2d 1098.) Where the testimony is conflicting but legally sufficient if the prosecution's evidence is believed, the question is for the trier of fact. (*People v. Carpenter* (1963), 28 Ill. 2d 116, 122, 190 N.E.2d 738.) The trier of fact may accept all, part or none of a confession and discrepancies between a confession and other evidence are for the trier of fact to assess. *People v. Schultz* (1981), 99 Ill. App. 3d 762, 770, 425 N.E.2d 1267.

■■ The jury in the present case chose to believe the testimony of the State's witnesses. Such evidence was clearly sufficient to prove defendant guilty beyond a reasonable doubt. Peggy Price testified that defendant was with decedent a few hours before the decedent was murdered. There was also a written confession signed by defendant and corroborated by oral confessions heard by three police officers and a civilian secretary. The testimony of those who heard the oral confessions and witnessed the circumstances of the written confession was devoid of any material inconsistencies. We conclude the evidence presented was not so improbable or so palpably contrary to the verdict as to raise a reasonable doubt of defendant's guilt.

The judgment of the trial court is affirmed.

Affirmed.

HARTMAN, P. J., and DOWNING, J., concur.