THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES HENSON, Defendant-Appellant.

Fourth District   No. 14268

Opinion filed March 10, 1978.

Fred B. Hoffman, of Springfield, for appellant.

C. Joseph Cavanagh, State's Attorney, of Springfield (Robert C. Perry, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE WEBBER delivered the opinion of the court:

Defendant and his co-defendant, Stanley Stigleman, were charged by information filed in the circuit court of Sangamon County with the offenses of rape of Ms. H., rape of Ms. B., burglary with intent to commit rape and burglary with intent to commit theft. Defendant alone was charged with deviate sexual assault. The cases were severed for trial on motion of Stigleman. After a jury trial defendant was found guilty of all charges and thereafter was sentenced to 8 to 20 years on each sex offense and 2 to 6 years on the burglary offense, all sentences to run concurrently. This appeal followed.

By reason of the issues raised by defendant and by reason of a prior order of this court concerning Stigleman, a detailed recitation of the shocking and sordid evidence is not necessary. Suffice it to say, the record discloses adequate factual bases upon which a jury could find the defendant guilty beyond a reasonable doubt.

Defendant raises three issues on appeal: (1) misconduct by the prosecutor in commenting in closing argument on defendant's right of silence and on matters not in evidence, the effect of which denied defendant a fair trial; (2) failure of the State to prove defendant accountable for the rape of Ms. B. by failing to prove that the act was against her will; and (3) failure of the State to prove that defendant possessed the necessary specific intent to commit burglary on account of the influence of drugs and alcohol.

Issue No. 1 arose in the following manner. After the events leading to this prosecution occurred, defendant was interviewed by several police officers at several different times. At first he protested his complete

innocence, but after being faced with a crucial piece of evidence, he changed his story and made an incriminating statement. Motions to suppress the statement were denied. At trial defendant claimed that Ms. H. had consented to the sexual acts, he admitted that he had not mentioned any consent by the victim in his statement to the police; he also asserted that he had not read the statement carefully, although he admitted to signing it and initialing each page and knew that it was an important document.

A portion of the prosecutor's final argument went as follows:

"Miss Scott [prosecutor]: * * * He said, however, that Dickerson just wrote a lot of things down and that he, Henson, just glanced at it and just signed it and didn't read it.

He never bothered to tell Officer Palmer or Officer Dickerson his defense that they consented, because he didn't want to be involved in rape.

* * *

Miss Scott: There is good old Dickerson. He's just dreaming this up, and he's writing it down, anything he wants. And this man who is under arrest and charged with rape and who's been advised of his rights, he knows he signed a waiver of his rights. He remembers that. Doesn't bother to read a five-page statement, just signs it.

And he keeps his defense a secret for three months from July 30th until yesterday afternoon. Perfectly good defense if it's believable.

Mr. Ray: Object to that comment, your Honor, I think it's improper.

The Court: That objection will be sustained. Refrain from that statement, Miss Scott.

Miss Scott: Ladies and gentlemen, he had every opportunity to tell Officer Palmer on the night of July the 30th that those girls consented, and he didn't. And he had every opportunity to tell Chief Dickerson on the 31st that those girls consented.

Mr. Ray: Same objection, your honor.

The Court: Same ruling."

Some further detail is necessary at this point in order to understand the prosecutor's statement. As indicated above, defendant made several statements. On the night of July 30, 1976, he went to the police station with Officer Palmer, and, after receiving the usual *Miranda* warnings, even though he was not under arrest, answered oral questions and denied any involvement in the offense. He then stood in a lineup and afterwards returned to the police station for several more hours of oral interrogation during all of which he denied involvement. The following day, July 31, 1976, Officer Dickerson confronted him with a crucial piece of evidence

and defendant then changed his story and made an oral and written statement incriminating himself after again receiving the *Miranda* warnings.

Defendant places his chief reliance on *Doyle v. Ohio* (1976), 426 U.S. 610, 617, 49 L. Ed. 2d 91, 97, 96 S. Ct. 2240, 2244. That case held that "* * * every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested."

Two things are immediately apparent about this statement: (1) It refers to silence generally, not silence in part, and (2) the ambiguity is tied directly to the *Miranda* warning, nothing else.

As to the first proposition, much debate has been engendered as to whether *Doyle* overrules a line of prior Illinois cases holding that where a defendant does not remain completely silent, his failure to offer an exculpatory story to the police may be used for impeachment purposes. *People v. Queen* (1974), 56 Ill. 2d 560, 310 N.E.2d 166, *People v. Allen* (1976), 37 Ill. App. 3d 619, 346 N.E.2d 486, *People v. Fleming* (1975), 36 Ill. App. 3d 612, 345 N.E.2d 10, and *People v. Kent* (1973), 15 Ill. App. 3d 523, 305 N.E.2d 42, are typical of such cases.

*People v. Robinson* (1976), 44 Ill. App. 3d 447, 358 N.E.2d 43, intimated that the court felt that the prior cases were still good law but distinguished that case before it from *Doyle.*

We do not believe that the *Doyle* court intended to lay down a blanket prohibition on silence of every variety. It prohibits comment or cross-examination on refusal to make any statement except a general denial, but does not go so far as to say that the prosecutor is barred from comment on a partial statement. "Silence" is one of those absolute words like "unique" which admit of no degrees. Silence is the absence of sound and in human context denotes "uncommunicative." In the words of Jonathan Swift, "* * * whose uncommunicative heart will scarce one precious word impart * * *."

The *Doyle* court itself acknowledged the situation when it said in a footnote:

> "We recognize, of course, that unless prosecutors are allowed wide leeway in the scope of impeachment cross-examination some defendants would be able to frustrate the truth-seeking function of a trial by presenting tailored defenses insulated from effective challenge." 426 U.S. 610, 617 n. 7, 49 L. Ed. 2d 91, 97 n. 7, 96 S. Ct. 2240, 2244 n.7.

■■ We also deem it significant that *Doyle* tied the right of silence to the *Miranda* warning. One of the rubrics in *Miranda*, interminably familiar to every active trial court, is "anything you say can be used against you." If defendant's theory were correct, that any prior statement can be barred by a subsequent contradictory statement, there would be

no need for the warning. *Doyle* did not bar silence under all circumstances, only the silence engendered, if at all, by *Miranda.* Implicit in the doctrine of *Miranda* is the waiver of the right of silence, and if it is properly waived and a statement given, then the State may use that statement against the defendant in any legitimate way.

■■ We therefore conclude that *Doyle* bars comment and cross-examination only as to silence claimed as a result of *Miranda* warnings, but does not bar comment on statements given after such warning. *Robinson* so held. There, the defendant said, "I know my rights. I did it, but I'm not going to tell you why." The court construed the statement as a claim of *Miranda* privilege.

There is a further difference between the case at bar and *Robinson.* In *Robinson,* the defendant was apparently in control of all his faculties and in the words of the court only "stated the obvious" and then claimed privilege. In the case at bar, the defendant stated to Dickerson, "I was so high that I don't remember what happened, but I guess I screwed her. That's all. I don't remember much else, but after that I walked out." If, by his own statement, defendant could scarcely remember the act itself, it offends logic to be able to recollect consent.

Since we have concluded that *Doyle* and its associated cases are no bar to the comment in the instant case, we need not reach two additional reasons advanced by the State as to its proper conduct, *viz.,* that it was invited by defendant's direct testimony under the rule of our recent decision in *People v. Saulsbury* (1977), 55 Ill. App. 3d 663, 371 N.E.2d 165; or that it was harmless error.

Defendant's second attack on the prosecutor's closing argument is against the following:

> "I suggest to you that what happened to S. . . H. . . and what happened to D. . . B. . . is an outrage, that it could happen at all is an outrage. Those two girls will shudder every time they see shadows on the wall at night for the rest of their lives. They will live with that, and it will follow them, and it will haunt them, and they will try to forget it and they won't be able to."

Defendant claims there was not evidence as to the nervous state of the victims.

■■ Nowhere in this appeal has defendant contended that he was not proved guilty beyond a reasonable doubt of forcible rape of Ms. H. He questions only his accountability for the rape of Ms. B. Since we hold later in this opinion that the rape of Ms. B was forcible and against her will, both rapes were, in fact, forcible. It is a matter generally recognized and admitted that a forcible rape is an extremely traumatic experience for the victim. Therefore, we view the prosecutor's comments as a legitimate inference from the evidence. It is always proper for a prosecutor to dwell

on the evils of the crimes. (*People v. Williams* (1962), 26 Ill. 2d 190, 186 N.E.2d 353; *People v. Holmes* (1976), 41 Ill. App. 3d 956, 354 N.E.2d 611.) In *Holmes*, the prosecutor commented that the victims would never forget the armed robbery, and the court held no error was committed.

As to issue No. 2, defendant contends that the rape of Ms. B. by his co-defendant Stigleman was not shown beyond a reasonable doubt to be forcible and therefore he is not accountable for it. We disagree.

Defendant's contention is apparently based on Ms. B.'s admission on cross-examination that she did not scream nor cry for help and that she did not seek to escape on two occasions when Stigleman temporarily left the bedroom. There was further testimony that Stigleman possessed a shiny object but told her that it was not a knife and that Ms. B. smoked a cigarette with him after the act.

A woman need not resist a rapist where such resistance would be futile or endanger her life, nor where she is overcome by superior strength or paralyzed by fear. *People v. Smith* (1965), 32 Ill. 2d 88, 203 N.E.2d 879; *People v. Hendon* (1975), 33 Ill. App. 3d 745, 338 N.E.2d 472.

Defendant chooses to ignore other testimony that Ms. B. was shaking with fear before and during the episode; in the circumstances the assurance of a rapist that a shiny object is not a knife scarcely carries the clarion ring of reassurance. Further, there was evidence that Stigleman awakened her and told her not to make any noise and she would not be hurt. The hour was 3 a.m., an hour at which some *deus ex machina* was unlikely to appear. Ms. B. testified that she took the cigarette in an effort to calm her nerves.

After the episode had concluded and the intruders had departed, prompt complaint was made to the landlady who found both girls shaking and semihysterical.

■■ We have carefully examined the record and find defendant's contention to be without merit. He seems to view the entire incident as a piece of airy persiflage. We do not.

Defendant's final contention is that he was incapable of forming the necessary intent for burglary by reason of alcohol and drugs. Evidence was introduced that defendant had consumed considerable beer together with several seconal tablets during the evening prior to the episode. Officer Dickerson testified that defendant told him that he (defendant) was "screwed up." However, defendant did not tender any instructions on voluntary intoxication nor argue the defense to the jury. He assumes that the introduction of the evidence is a sufficient basis to permit him to argue the point on appeal. It is not so. In *People v. Worsham* (1975), 26 Ill. App. 3d 767, 771, 326 N.E.2d 134, 137-38, the court said:

> "However, it is not enough merely to introduce relevant evidence. If a defendant does not articulate his theory in argument and fails

to tender jury instructions identifyng it, he cannot reasonably complain on appeal if the trial court, unaided, fails to divine his intent. The failure to offer or request an instruction on an affirmative defense constitutes a waiver of the issue."

It can readily be seen why defendant did not, or could not logically, offer such an instruction. As mentioned above, intoxication sufficient to negate intent would likewise be sufficient to negate recollection of consent. Defendant presented to the jury an elaborate scenario what happened between him and the victims on the night in question prior to entering the apartment. Having done this, he was in no position afterwards to argue that he was so intoxicated as to have no memory.

■■ The failure of defendant to articulate the affirmative defense at the trial level and the further failure to tender an instruction on it constitutes a waiver of the point. We need not examine the evidence further, although we are convinced after a careful examination of the record that defendant's actions were not those of a person whose reason was overcome by alcohol and drugs.

The verdicts and judgments are affirmed.

Affirmed.

GREEN, P. J., and REARDON, J., concur.