(No. 50334.–

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. STEPHEN T. BELLER, Appellant.

*Opinion filed January 12, 1979.*

516

Ralph Ruebner and Mary Robinson, Deputy Defenders, and Michael Mulder, Assistant Defender, of Elgin, for appellant.

William J. Scott, Attorney General, of Springfield, and Robert H. Howerton, State's Attorney, of Marion (Donald

B. Mackay, Melbourne A. Noel, Jr., and David Barkhausen, Assistant Attorneys General, of Chicago, and Martin N. Ashley, of the Illinois State's Attorneys Association Prosecutors' Appellate Service, of Mt. Vernon, of counsel), for the People.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Defendant, Stephen T. Beller, was convicted of burglary and felony theft in a jury trial in the circuit court of Williamson County. Before being sentenced, defendant pleaded guilty to three other burglary charges pursuant to a negotiated plea agreement that included a sentence recommendation for all the foregoing offenses and immunity from prosecution with respect to some 70 other burglaries and thefts under investigation. The court sentenced defendant to four terms of 4 to 15 years' imprisonment, the sentences to form consecutive sets of two concurrent sentences each. The appellate court reversed the portion of the judgment which directed that defendant's sentences be consecutive to a previous parole-violation sentence, and otherwise affirmed. (54 Ill. App. 3d 1053.) The court rejected defendant's arguments that prosecutorial comments on defendant's failure to offer his exculpatory explanation at the time of his arrest and his failure to call a corroborating witness at trial had violated defendant's privilege against self-incrimination and denied him due process of law. We granted leave to appeal.

On December 13, 1975, the Ronald Morneweg home near Johnson City was burglarized. Police arrested Jimmie D. Walker after Walker sold a ring positively identified as stolen from the Morneweg residence. Walker told police that defendant had been involved in some burglaries and was keeping stolen items in the house where he was staying in Johnson City. After obtaining a warrant, police searched the house, seized a number of items, and arrested

defendant. Some of the items seized were positively identified by the Mornewegs at trial as coming from their home; others were identical in type, size and color to items stolen from the home.

Walker, originally a co-defendant in the trial, testified for the State under a statutory grant of immunity (Ill. Rev. Stat. 1975, ch. 38, par. 106—1 *et seq.*). He stated that he drove the getaway car while Larry Meyer and defendant burglarized the Morneweg residence. He described the subsequent division of the stolen merchandise, detailing the items apportioned to each of the accomplices. Walker identified items seized from defendant's house as belonging to defendant's share of the proceeds from the burglary. Walker also said that defendant had asked him to testify that he had sold some of the stolen items to defendant; Walker said that he refused.

Defendant's testimony raised a defense of innocent purchase. Defendant testified that he had bought from Jimmie Walker most of the items identified at trial as coming from the Morneweg home. He added that he had bought one item from a stranger in a bar. Several other witnesses were called by defendant: Larry Meyer testified that Walker had tried to sell him some of the items in question and that he had driven Walker to defendant's house several times so that Walker could sell defendant some of the items. Mary Lawrence, the mother of defendant's fiancee, testified that Walker and Meyer several times drove up to her house, where defendant was staying, and that defendant went out to the car and returned with several of the items in question. James Lawrence, the brother of defendant's fiancee, testified that he was present in Meyer's house on one occasion when defendant bought one of the stolen items from Walker. Two prisoners from the Williamson County jail testified for the defense that they had overheard Walker in jail telling defendant that he would admit selling some of the

stolen items to defendant but that defendant would have to find his own explanations for the other items Walker had sold him. These two witnesses also stated they had been intimidated prior to trial by police talk about perjury penalties and the effect the witnesses' testimony might have upon their own cases. A detective testified in rebuttal that at the request of the State's Attorney the officers interviewed the two prisoners about their intended testimony, and that one said he had not seen or heard anything about which to testify. The other witness indicated he did not know what he had heard and did not know whether he should say anything. The detective testified he had told them about the offense of perjury.

Defendant contends that the prosecutor's reference in closing argument to defendant's failure to offer his exculpatory explanation at the time of his arrest violated his privilege against self-incrimination and denied him a fair trial under the doctrine of *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240. A police detective testified that, when defendant was being driven to the county jail after his arrest, he asked the witness whether police had Larry Meyer in custody and the witness responded that they did not. Meyer subsequently pleaded guilty to the Morneweg burglary in a separate case. The witness added that neither he nor the other officers in the car were questioning defendant at that time. The evidence does not indicate whether defendant had been given the *Miranda* warnings when he asked the question. Both the appellate court and defendant's brief in this court have asserted that the record did not reveal whether defendant was ever given the *Miranda* warnings. In fact, however, the record contains a *Miranda* waiver form signed by defendant shortly after he arrived at the county jail. Aside from the question about Meyer, defendant made no statements to police.

The prosecutor's theory at trial was that defendant's

question about Meyer was an implied admission, showing defendant's knowledge of Meyer's involvement in the burglary, implying that defendant was Meyer's accomplice, and demonstrating that defendant's story of innocent purchase from Walker was a subsequent fabrication. The prosecutor made the following closing argument:

> "[W]hen the Defendant was arrested you heard Detective Wiseman on the stand say as he was being transported back, 'Do you have Larry Meyer under arrest?' He knew at that time that the man that he had gone in the Morneweg house with was in fact Larry Meyer. He knew that that was this co-Defendant. He knew that that was the man, the man who could hurt him most and he wanted to know right then, is Larry Meyer under arrest. *** Counter-posed against that—that very telling item of proof, is the Defendant's statement, I bought these items from who. Walker. Jimmy Walker. I didn't have anything to do with it. Meyer didn't sell me these items. Walker sold me those items.
>
> If that were true, ladies and gentlemen of the jury, when he was arrested, who would he be asking about? He wouldn't ask about Meyer. He would say, do you have Jimmy Walker under arrest. I want to talk to that young man. I want you to talk to that young man because he sold me those items. That's what he would have said. He would not have asked about Meyer, not the one who went in the house with him, he would have asked about the man who sold the stuff to him."

He returned to this theme in rebuttal:

> "When this man was arrested, and when he wanted to know where Meyer was, he [*sic*] co-defendant, he never told anybody, I bought this stuff. From Jimmy Walker. I bought it ***."

Defendant has characterized these remarks as comments on his post-arrest silence. In view of the rationale of the majority opinion in *Doyle*, we are compelled to agree. Defendant's question to the police had been volunteered by him, and the prosecutor was entitled to draw legitimate inferences from that question during closing argument.

(*People v. Parks* (1978), 57 Ill. App. 3d 405, 409; *State v. Dorsey* (1978), 224 Kan. 152, 153, 578 P.2d 261, 264; *Commonwealth v. Hoffer* (1978), ——— Mass. ———, ———, 377 N.E.2d 685, 692; *Bell v. State* (1977), 267 Ind. 1, ——, 366 N.E.2d 1156, 1160.) The prosecutor, however, did more than this. He emphasized the alleged inconsistency between defendant's question at the time of his arrest and his exculpatory story at trial by stressing the fact that when defendant asked police about Meyer he never mentioned Walker or stated that he had purchased the stolen merchandise. Although defense counsel objected to the prosecutor's comments for the first time on appeal, the appellate court concluded that if the comments violated the rule of *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, they would constitute plain error.

In *Doyle* the Supreme Court held that a defendant was denied due process when a State prosecutor sought to impeach the defendant's exculpatory story, told for the first time at trial, by cross-examining him about his failure to tell the story at the time of his arrest after receiving *Miranda* warnings. The court reasoned that "every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested." (426 U.S. 610, 617, 49 L. Ed. 2d 91, 97, 96 S. Ct. 2240, 2244.) A threshold question in this case is whether the *Doyle* rule is applicable when there is no evidence that defendant was previously given the *Miranda* warnings. We hold that the rule is applicable. The *Miranda* warnings do not confer rights on a defendant; they merely advise a defendant, who may be ignorant or intimidated, that he possesses such rights. Since every arrested person has the right to remain silent and may be aware of this right even in the absence of *Miranda* warnings, post-arrest silence remains "insolubly ambiguous." In *People v. Rehbein* (1978), 74 Ill. 2d 435, 442, we noted that we made "no distinction between the

defendant's silence before or after *Miranda* warnings were given." In *United States v. Impson* (5th Cir. 1976), 531 F.2d 274, 277, the court reasoned that failure to apply the *Doyle* rule in the absence of *Miranda* warnings would reward police for failure to give the warnings. Accord, *United States v. Henderson* (5th Cir. 1978), 565 F.2d 900, 905.

In determining whether the prosecutor's comments violated the *Doyle* rule, we note that the *Doyle* court itself specified one situation in which prosecutorial comment on post-arrest silence was warranted:

> "It goes almost without saying that the fact of post-arrest silence could be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest. In that situation the fact of earlier silence would not be used to impeach the exculpatory story, but rather to challenge the defendant's testimony as to his behavior following arrest. *Cf. United States v. Fairchild,* 505 F.2d 1378, 1383 (CA5 1975)." (426 U.S. 610, 619-20 n.11, 49 L. Ed. 2d 91, 98 n.11, 96 S. Ct. 2240, 2245 n.11.)

This court has previously invoked that exception in *Rehbein,* and a similar rationale is evident in *People v. Queen* (1974), 56 Ill. 2d 560. This case does not fall within that exception, however, because the purpose of the prosecutor's remarks here was clearly to impeach defendant's testimony that he bought the stolen goods from Walker, and not to impeach testimony regarding his post-arrest behavior.

A second type of situation exists in which this court in *Rehbein* held that prosecutorial reference to silence does not violate the *Doyle* rule. (See also *United States v. Mireles* (5th Cir. 1978), 570 F.2d 1287.) The factual

situation in *Rehbein* resembled the present one in that the defendant had not remained silent but had voluntarily communicated with police. It differs from this case in that the statements then made were completely inconsistent with the facts testified to at trial. There the prosecutor's reference to defendant's failure to tell his exculpatory story earlier was made in the context of the manifest inconsistency between defendant's earlier statement and his testimony at trial. The defendant in *Rehbein* was charged with giving a woman a ride in his car, then driving to an isolated area and sexually assaulting her. Police traced defendant by the license number that the complainant had noted on his car. When confronted by police, defendant said that the license plate belonged to a car which had long been inoperable and that he had been at home at the time of the assault. At trial defendant acknowledged that he had picked up the complainant but asserted that she had initiated the sexual contact and then asked for money. He denied making the earlier, wholly inconsistent, statements to police. During cross-examination in the midst of proper impeachment by means of prior inconsistent statements, the prosecutor asked defendant whether he had earlier told police the story he was telling at trial. This court held that in the context of proper impeachment by inconsistent statements, the prosecutor's reference to defendant's silence did not constitute a *Doyle* violation.

The court in *Rehbein* relied in part on *United States v. Mireles* (5th Cir. 1978), 570 F.2d 1287. In that case defendant was .arrested while transporting a large amount of marijuana in a truck partially loaded with furniture. According to an agent's testimony, at the time of his arrest defendant denied knowledge of the marijuana concealed in the truck and said he had borrowed the truck from his uncle to move his own furniture. At trial defendant again denied that he had known about the marijuana, but said

that he had been moving furniture for Guadalupe Rivas. On cross-examination, the prosecutor asked defendant whether he had earlier told agents about Rivas, and in closing argument called attention to defendant's failure to mention Rivas to agents. The court held that "the prosecutor's questions and argument were not an impeachment by silence, as in *Doyle,* but merely an effort to impeach by prior statements that were inconsistent with defendant's testimony at trial." 570 F.2d 1287, 1293.

Although the situations analyzed in *Rehbein* and *Mireles* bear some resemblance to the situation here, they are not the same. The difference lies in the fact that in both *Rehbein* and *Mireles* the defendants' prior statements to police were wholly inconsistent with their trial testimony, a difference crucial to the rationale of the decisions. Here, the inconsistency, if it exists, is not manifest. It arises, if at all, from the unarticulated reasons which prompted the question. In the State's view, the only logical explanation for the question is that defendant asked about Meyer because Meyer had burglarized the house with defendant. That is a logical inference, and the State may and did comment upon it. But that is not the only possible reason for the question. Meyer, Walker and defendant had been acquainted before the burglary and had apparently been together on numerous occasions afterwards before defendant was arrested. Meyer testified to attempts by Walker to sell some of the items to him, and defense witnesses testified to the presence of Walker and Meyer at defendant's residence. In these circumstances, it seems to us that defendant's question may have been prompted by reasons other than that posited by the State, and which are not inconsistent with defendant's trial testimony. It is this ambiguity: the absence of the direct contradiction or manifest inconsistency present in *Rehbein* and *Mireles* which precludes the additional comment by the prosecutor referring to defendant's failure to ask about

Walker. That ambiguity, the reasons for which are uncertain, is in its effect the comment upon silence forbidden by *Doyle.* When a defendant's earlier and later statements are manifestly inconsistent, the prosecutor may properly impeach the defendant by means of the earlier statement, and he derives no added and prejudicial advantage from establishing that when the defendant made the first statement he failed to make the contradictory second statement. Thus this case would be controlled by *Rehbein* if defendant had made a statement to police denying guilt and claiming that he bought the stolen goods from Meyer. This would have been obviously inconsistent with his testimony at trial that he bought the goods from Walker.

We therefore conclude that the prosecutor's comments on defendant's failure to offer his exculpatory explanation at the time of his arrest were error. That error was, however, in our judgment, harmless beyond a reasonable doubt. (*Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.) The court in *Doyle* seemed to indicate that a violation of its rule could be harmless error (426 U.S. 610, 619-20, 49 L. Ed. 2d 91, 98-99, 96 S. Ct. 2240, 2245), and the great majority of courts, both Federal and Illinois, so hold. (See, *e.g., Hayton v. Egeler* (6th Cir. 1977), 555 F.2d 599; *Stone v. Estelle* (5th Cir. 1977), 556 F.2d 1242; *United States v. Davis* (5th Cir. 1977), 546 F.2d 583; *United States v. Wycoff* (9th Cir. 1976), 545 F.2d 679; *People v. Bolden* (1st Dist. 1978), 59 Ill. App. 3d 441; *People v. Douglas* (4th Dist. 1978), 58 Ill. App. 3d 149; *People v. Anderson* (1st Dist. 1977), 46 Ill. App. 3d 607; *People v. Sepka* (1st Dist. 1977), 51 Ill. App. 3d 244.) In *Davis* (546 F.2d 583, 595 n.31), the United States Court of Appeals for the Fifth Circuit noted: "This court has not considered the *Doyle* rule as an absolute one. Thus, we apply the principle therein on a case-by-case basis ***." We believe this to be the better view.

In this case the prosecutor's comments to the effect that defendant's questions revealed his knowledge of Meyer's involvement in the burglary, indicating that the men were accomplices, were permissible comments. The prosecutor's attempt to emphasize the inconsistency between this inference and defendant's story at trial by pointing out that defendant had not told his story to police was error under *Doyle*. Nonetheless, we agree with the appellate court that the legitimate inferences the prosecutor drew "essentially duplicated the inferences he drew from defendant's silence." (54 Ill. App. 3d 1053, 1061.) That fact, considered with the substantial evidence of guilt, satisfies us beyond a reasonable doubt that the error did not contribute to defendant's conviction.

Defendant also contends that the prosecutor's comment during closing argument on the defendant's failure to call a witness to corroborate a particular point in his testimony denied defendant a fair trial. Because the witness was not an alibi witness and there is no showing that he was not equally available to both parties, the remark was improper. (*People v. Rubin* (1937), 366 Ill. 195; *People v. Mays* (1972), 3 Ill. App. 3d 512.) Because the potential testimony was at best tangential to defendant's defense of innocent purchase, however, we believe that the improper remark was harmless beyond a reasonable doubt. The other prosecutorial comments that defendant complains of as prejudicial are not in issue here because their propriety was waived by failure to question it at trial.

For the foregoing reasons the judgment of the appellate court is affirmed.

*Judgment affirmed.*