THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. J.C. JONES, Defendant-Appellant.

First District (1st Division)   No. 1—89—2382

Opinion filed December 21, 1992.

Rita A. Fry, Public Defender, of Chicago (Ira Sheffey, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Margaret J. Faustmann, and Clare T. McEnery, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

Following a jury trial, defendant J.C. Jones was found guilty of aggravated criminal sexual assault. The trial judge sentenced defend-

ant to 25 years in the Illinois Department of Corrections. The issues defendant raises on appeal are: (1) that he was denied a fair trial when the prosecutor argued that his post-arrest silence was evidence of his guilt; and (2) that he was denied a fair trial because the prosecutor made various statements during closing argument which (a) unjustly attacked defense counsel, (b) were calculated to inflame the passions of the jury, and (c) were misstatements of the evidence.

At the time that this assault was alleged to have occurred, the victim, 14-year-old B.A., was living in an apartment with her mother, her brother, the defendant, and the defendant's eight-month-old son. B.A. testified that on July 4, 1988, at approximately 7 p.m., her uncle drove her to the apartment from a barbecue at his house. The rest of the family had attended another barbecue at the home of defendant's sister from which they had not returned. B.A. testified that she played alone for several hours on the porch and then went inside to fix something to eat. She stated that while she was cleaning up, defendant returned with his son. Defendant put the chain on the door and told B.A. to fix the baby a bottle. According to B.A., while she was feeding the baby, defendant said he wanted to talk to her in the bedroom. She replied that they could talk right there in the living room, but defendant insisted they go into the bedroom. B.A. testified that she complied because she was afraid and defendant's manner and tone of voice indicated it was an order. According to B.A., once they were in the bedroom defendant threatened to cut her throat with a razor if she did not take off her clothes. B.A. stated that when they were both naked, defendant got on top of her and "stuck his penis in [her] vagina." When he finished, B.A. said that defendant told her to get dressed and make him some popcorn. After the incident, either defendant or B.A. called her mother from the bedroom. Her mother was drunk and did not want to come home that night. B.A. stated she could not tell her mother what had happened because defendant was right next to her.

B.A. testified that, after making the popcorn for defendant, she was able to slip the chain off the door and flee the apartment without defendant's knowledge. She ran a couple of blocks to a public telephone on 55th and State and called her uncle. She told him that defendant had raped her. Her uncle picked her up approximately 10 minutes later and took her to the police station. After she was interviewed by the police, she was taken to Wyler Children's Hospital (Wyler's) for an examination. She also testified that she did not have a boy friend, had never before engaged in sexual intercourse, and was crying throughout the entire ordeal.

On cross-examination, B.A. stated that defendant had been living with her mother for three years. Both defendant and B.A.'s mother were heavy drinkers who frequently argued with each other. B.A. stated that she had lived with her aunt for a while after defendant slapped her for siding with her mother in a fight. B.A. also explained that the reason she did not use the public phones across the street from her apartment when she escaped after the incident was because she was afraid defendant would be coming after her. She also stated that she did not go to a neighbor's apartment or to the police station which was just two blocks away in the other direction because she was not thinking clearly.

Dr. Susan Gerber examined B.A. at Wyler's at approximately 3:30 a.m. on July 5, 1988. She stated that B.A. was upset and withdrawn and that she told her she had been raped by defendant. Her examination revealed a fresh abrasion to the hymenal area and a laceration to the right side of the vulva. Dr. Gerber also noticed a "whitish discharge." She stated that the injuries were consistent with someone who had just had intercourse. On cross-examination, Dr. Gerber admitted that "it's possible" to have lacerations even after consensual sex.

Pamela Fish, a technician employed by the police crime lab, analyzed the semen found in B.A.'s vaginal smear. Her tests showed that defendant was a type O secretor and the sperm found inside B.A. came from a type O secretor. B.A. was not a type O secretor. Statistically, this means that defendant was included within the 39% of the black male population who could have donated the sperm.

B.A.'s uncle testified that when he picked up the victim from the phone booth she was shaking and crying and her clothes were not fitting properly.

Officer Murray testified that he spoke with B.A. and her uncle on the morning of July 5, 1988. He stated that he had B.A. repeat her story several times in order "to see if there were any discrepancies in it and there wasn't [sic]." He then drove B.A. to the hospital and proceeded on to defendant's apartment. No one responded to his "repeated knocking and calling." He returned on July 6 and July 7, but got no response from the apartment. On July 7, however, acting on an informant's tip, Murray and his partner proceeded to the home of defendant's brother, where they located and arrested defendant.

Christina Coppage, the live-in girl friend of defendant's brother, testified that defendant arrived at their home at approximately 3 a.m. on July 5, 1988. She stated that she overheard defendant tell his brother that he did not rape B.A. and that B.A. had given him sex.

Donna Hendricks, a Department of Children and Family Services (DCFS) worker who interviewed B.A., testified that B.A. told her she had been raped by defendant. She stated that to her recollection, B.A. told her that defendant had threatened her with a knife.

Defendant testified that on July 4, 1988, he left the barbecue at his sister's house early because he and B.A.'s mother had gotten into a fight. At approximately 11 p.m. he arrived home with his son. He stated that he discovered B.A. in the kitchen with a young boy. He did not know the boy's name, but he had seen him in the neighborhood. He told the boy to leave, because B.A. was not allowed to have men over at that time of night when her mother was not home. After the boy left, defendant went into the bedroom to change the baby's diaper and he noticed that the bed sheets had been changed. According to defendant, B.A. told him that the boy had cut his finger and she had spilled mercurochrome on the sheets while treating it. Defendant stated he retrieved the old sheets and noticed red spots on them. Defendant testified that B.A. then began to cry and admitted she had had sex with the boy in the bed. According to defendant, B.A. begged him not to tell her mother. Defendant stated, however, that he did call her mother to have her come home. B.A. also talked to her mother on the phone, but her mother did not want to come home. Defendant stated he then tried to call her back and that B.A. left the apartment while he was on the phone. He testified that it was not unusual for B.A. to leave the apartment late at night when she anticipated getting a beating.

Defendant stated he went to sleep about 5 a.m. and denied hearing the police at the door that morning. He said he left for his brother's home the next morning after B.A.'s mother returned in order to cool off after the fight he and B.A.'s mother had had the previous night. He stated he found out on July 5, while at his brother's house, that B.A. had accused him of rape. He denied raping B.A. or threatening her with a razor blade. He also testified that other than greeting the police officers, he never made any statements to the police or to the assistant State's Attorney.

Detective Stewart was called by the State to rebut defendant's testimony. He testified that he interviewed B.A. on July 5, 1988, at Wyler's. He stated that B.A. told him that defendant had used a razor blade to threaten her. He also said that he interviewed defendant the morning defendant was arrested. According to Stewart, he advised defendant of his *Miranda* rights and asked him if he wanted to talk about the case. Defendant said he would talk about the case and he denied sexually assaulting B.A. According to Stewart, defendant told

him that B.A. was making the story up because he had had an argument with her mother. Additionally, over strenuous defense objection, Stewart testified that defendant never related to him the story defendant told at trial that he had found a boy in the apartment with B.A. when he returned on July 4 and that B.A. had had sex with that boy. Additionally, Stewart testified that he was present at a later conversation between defendant and Assistant State's Attorney O'Connor. He stated that defendant told O'Connor "basically the same thing that he had told me." He testified that defendant never told O'Connor that he had found a boy in the apartment with B.A. or that B.A. had told him that she had had sex with this boy.

During closing argument, the prosecutor commented on defendant's failure to tell the police upon his arrest about the presence of the boy in the apartment with B.A. Defendant's objection was overruled. The prosecutor also made reference to defense counsel in his closing argument. The defendant's general objection was overruled. The defense also objected to certain statements made by the prosecutor in argument which were allegedly "inflammatory" and which misstated the evidence. These objections were also overruled.

After being convicted of aggravated criminal sexual assault, defendant filed a motion for a new trial and a motion in arrest of judgment. Both motions were denied.

Defendant's first contention on appeal is that he was denied a fair trial when the prosecutor argued that his post-arrest silence was evidence of his guilt. Defendant first contends that the following statement which the prosecutor made in closing argument was improper and violated his due process rights:

"What does he say to the police after he is arrested 3 days later ***[?] What does he say then? Does he say to Detective Stewart [B.A.] had a boy in the apartment. I caught her and I threw him out. And then she told me they had sex. No. He had every chance in the world to say that to the detectives. This is after he's been arrested and he is in the police station. Now they are asking him for his story. Never says it. Because he hasn't thought of it yet. That is why."

Defendant also argues that the following comment in the prosecutor's rebuttal argument was improper:

"I caught her in a house with a boy ***. Don't you think that [sic] would be the first words off his tongue? *** But he didn't say that. But after he has a year and he figured out, well, I can't have consensual sex with a 14-year old because that is still against the law, I can't sit there and tell about this fight

with the mother because, yeah, I remember. No, [B.A] didn't know about the fight. I have to come up with something else."

Defendant asserts that these references to his post-arrest silence violated his constitutional right to remain silent under *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240. In arguing against reversal, the State first maintains that defendant has waived this argument by failing to raise it in his post-trial motion. We agree with the State.

■ It is well established in Illinois that to preserve a perceived trial error for review, defendant must make a timely trial objection and then renew that objection in a written post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 187, 522 N.E.2d 1124, 1130.) Defendant asserts that he made a contemporaneous trial objection to the prosecutor's comments during closing argument which was wrongly overruled. However, after reviewing the record, it is not clear whether defendant's general objection at trial was to the prosecutor's references to defendant's post-arrest silence or whether it was to a statement by the prosecutor which defense counsel believed misstated the evidence. Nonetheless, it is clear that defendant did not raise the issue in his post-trial motion as required by *Enoch* and, therefore, has waived the question on review.

Under Supreme Court Rule 615(a), however, a reviewing court may take notice of plain errors affecting substantial rights even though not properly preserved by trial counsel. (134 Ill. 2d R. 615(a).) Under the plain error exception to the waiver doctrine, a reviewing court will address an issue not properly preserved if either (1) the evidence is "closely balanced" and, as a result of the error alleged, an innocent person may have been convicted; or (2) the error, if true, was of such magnitude that defendant would necessarily have been denied a fair trial. (*People v. Herrett* (1990), 137 Ill. 2d 195, 210, 561 N.E.2d 1, 7-8; *People v. Carlson* (1980), 79 Ill. 2d 564, 576-77, 404 N.E.2d 233, 238.) The plain error exception does not apply in this case.

First, the evidence in this case is not closely balanced. B.A.'s version of the events of July 4 was consistent both at trial and immediately following the incident when she related her story to no less than four people including her uncle, Officer Murray, Detective Stewart, and DCFS worker Donna Hendricks. All the witnesses who viewed her the night of the incident stated that she was upset, and her uncle testified that when he picked her up to take her to the police station her clothes were not fitting properly. The only relevant conflict in her testimony that defendant was able to point out was that she may have

told Ms. Hendricks that defendant threatened her with a knife and not a razor as she related to the other witnesses; this is hardly a glaring inconsistency.

Additionally, Stewart testified that defendant waived his *Miranda* rights and told him that B.A. was making up the story because of a fight defendant had with B.A.'s mother. On the other hand, Christina Coppage testified that she overheard defendant tell his brother that he had not raped B.A., but that B.A. had given him sex. At trial, however, defendant testified that B.A. slept with an unidentified boy on July 4 whom defendant kicked out of the apartment. Finally, defendant was a type O secretor and there was physical evidence which established that B.A. had engaged in sexual intercourse and that the man who had sex with her was a type O secretor.

After reviewing the record, and in light of the above testimony and physical evidence, we cannot say that the evidence was so close the alleged error would have "tipped the scales" against the defendant. Additionally, we believe the evidence against defendant was "highly persuasive" and, under the second prong of the plain error exception, the alleged error was not so prejudicial as to deny defendant a fair trial. We note that the Illinois Supreme Court has expressly held in this exact situation that "a comment upon a defendant's post-arrest silence, while improper, is not an error of such magnitude as to clearly deprive the defendant of a fair trial." *Herrett*, 137 Ill. 2d at 215, 561 N.E.2d at 10; see *People v. Stewart* (1984), 104 Ill. 2d 463, 488, 473 N.E.2d 1227, 1238; *People v. Lucas* (1981), 88 Ill. 2d 245, 252, 430 N.E.2d 1091, 1094.

Notwithstanding defendant's waiver, however, there was no error here. In *Doyle v. Ohio* (1976), 426 U.S. 610, 619, 49 L. Ed. 2d 91, 98, 96 S. Ct. 2240, 2245, the United States Supreme Court held that it is a due process violation, after defendant has received his *Miranda* warnings, for a prosecutor to comment on a defendant's post-arrest silence for the purpose of impeaching defendant's explanation at trial. The *Doyle* Court reasoned that every post-arrest silence is "insolubly ambiguous" in light of the fact that every defendant has a constitutional right to remain silent. (*Doyle*, 426 U.S. at 617, 49 L. Ed. 2d at 97, 96 S. Ct. at 2244.) In other words, a defendant's silence may merely be his invoking of his constitutional right as opposed to an admission that he has no explanation or defense. (*Doyle*, 426 U.S. at 617, 49 L. Ed. 2d at 97, 96 S. Ct. at 2244; *People v. Monaghan* (1976), 40 Ill. App. 3d 322, 326, 352 N.E.2d 295, 298.) Illinois courts have closely followed *Doyle* and explicitly held that the rule is applicable even if it appears that defendant has not been advised of his *Miranda*

rights. (*People v. Beller* (1979), 74 Ill. 2d 514, 521, 386 N.E.2d 857, 860.) There are, however, exceptions to the *Doyle* rule.

The State may impeach a defendant with his post-arrest silence if the defendant gives exculpatory testimony at trial and claims he told the same story to the police upon arrest. (*Doyle*, 426 U.S. at 619 n.11, 49 L. Ed. 2d at 98 n.11, 96 S. Ct. at 2245 n.11; *Beller*, 74 Ill. 2d at 522, 386 N.E.2d at 860.) Additionally, if defendant makes an exculpatory statement at trial which is inconsistent with a post-arrest statement made to the police after being informed of his right to remain silent, the prosecutor may confront defendant with the inconsistencies and in doing so properly comment on any factual omissions in the post-arrest statement which defendant included in his trial testimony. (*Anderson v. Charles* (1980), 447 U.S. 404, 408, 65 L. Ed. 2d 222, 226-27, 100 S. Ct. 2180, 2182; *Beller*, 74 Ill. 2d at 524-25, 386 N.E.2d at 860-61; *People v. Rehbein* (1978), 74 Ill. 2d 435, 443, 386 N.E.2d 39, 42; *People v. Graves* (1986), 142 Ill. App. 3d 885, 890-92, 492 N.E.2d 517, 521-23.) In a sense, any mention of these "omissions" in defendant's post-arrest statement is a comment on "silence" but, as the *Anderson* Court stated, *"Doyle* does not require any such formalistic understanding of 'silence.' " (*Anderson*, 447 U.S. at 409, 65 L. Ed. 2d at 227, 100 S. Ct. at 2182.) Finally, we would note that once a defendant has expressly waived his right to remain silent and made a statement, the "insolubl[e] ambigu[ity]" which is the basis for the prohibition against commenting on defendant's post-arrest silence is no longer present and, therefore, the *Doyle* rule would be inapplicable. See *Anderson*, 447 U.S. at 408, 65 L. Ed. 2d at 226, 100 S. Ct. at 2182; *People v. Trumbull* (1978), 67 Ill. App. 3d 262, 264, 384 N.E.2d 842, 844; *People v. Henson* (1978), 58 Ill. App. 3d 42, 46, 373 N.E.2d 852, 855.

In *People v. Graves* (1986), 142 Ill. App. 3d 885, 492 N.E.2d 517, defendant was arrested for murder. After being informed of his right to remain silent, he told the police that he was "high" on drugs at the time of the killing. (*Graves*, 142 Ill. App. 3d at 888, 492 N.E.2d at 520.) Later, at his trial, defendant asserted for the first time that he acted in self-defense. (*Graves*, 142 Ill. App. 3d at 888, 492 N.E.2d at 520.) In closing argument, the prosecutor commented on defendant's failure to previously mention self-defense when he made his original statement after waiving his right to remain silent. (*Graves*, 142 Ill. App. 3d at 892, 492 N.E.2d at 522.) The *Graves* court held that *Doyle* was not controlling and that the prosecutor was not commenting on defendant's post-arrest silence, but rather impeaching defendant with

his inconsistent statements. *Graves*, 142 Ill. App. 3d at 892-93, 492 N.E.2d at 522-23.

In *Henson* (58 Ill. App. 3d at 43, 373 N.E.2d at 853), defendant was arrested for rape. After being informed of his *Miranda* rights, defendant said that he did not remember what happened because he was so high, but that "I guess I screwed her." (*Henson*, 58 Ill. App. 3d at 46, 373 N.E.2d at 855.) At trial, defendant asserted that the woman he was accused of raping had given her consent to the sexual acts. (*Henson*, 58 Ill. App. 3d at 44, 373 N.E.2d at 853.) The *Henson* court held that there was nothing improper about the prosecutor's remarks during closing argument that defendant had not mentioned his defense of consent when he made his statement to the authorities. The court reasoned that *Doyle* only bars comment on a defendant's silence which was induced by *Miranda*. (*Henson*, 58 Ill. App. 3d at 46, 373 N.E.2d at 855.) Therefore, if the defendant waives his *Miranda* rights, a subsequent statement can be used against the defendant "in any legitimate way." *Henson*, 58 Ill. App. 3d at 46, 373 N.E.2d at 855.

In *Trumbull* (67 Ill. App. 3d at 263, 384 N.E.2d at 844), defendant was arrested for aggravated battery and armed robbery. After being advised of his *Miranda* rights, defendant made a voluntary statement that he had assaulted the complainant. (*Trumbull*, 67 Ill. App. 3d at 263, 384 N.E.2d at 843.) At trial, however, defendant testified that he acted in self-defense and that the complainant had a broken pop bottle behind his back and was going to "cut him." The *Trumbull* court concluded that *Doyle* did not apply, because defendant did not remain silent after being advised of his rights. Therefore, it was proper for the prosecutor to impeach defendant by commenting on his failure to mention the pop bottle when he gave his original exculpatory story to the police. The court reasoned that, after waiving his rights and making a statement, it would have been "logical and expected" that he would have mentioned the complainant's attempt to cut him with a pop bottle "in order to negate all criminal liability." *Trumbull*, 67 Ill. App. 3d at 264, 384 N.E.2d at 844.

Similarly, in the instant case, Detective Stewart testified that he read defendant his *Miranda* warnings the morning he was arrested and asked him if he wanted to talk about the case. He stated that defendant then waived his *Miranda* rights and began to discuss the case. According to Stewart, defendant denied sexually assaulting B.A. and explained that she must have invented the story because he had had an argument with her mother. Stewart also testified that he was present later when defendant made the same statement to the assist-

ant State's Attorney. B.A.'s allegations were made, however, before she knew about the argument that her mother and defendant had had that night. Additionally, defendant made his statement before he knew of the physical evidence which corroborated B.A.'s story. At trial, after these inconsistencies became apparent, defendant testified that when he returned home on July 4 he found B.A. with a boy and that B.A. had had sex with the boy. She begged him not to tell her mother, but when he said he was going to she ran from the apartment. He denied making any statements to either Detective Stewart or to the assistant State's Attorney.

Based upon the above facts, it was not improper for the prosecutor to comment on the legitimate inference that defendant, after realizing that his explanation was insufficient to protect him, invented a new exculpatory story at trial which took all these facts into account. As in *Trumbull*, it would have been "logical and expected" that, if defendant waived his rights and made a statement, he would have mentioned the young boy he discovered with B.A. and the fact that she had slept with the boy "in order to negate all criminal liability." Therefore, it was not error for the prosecutor to comment on defendant's failure to relate his exculpatory story that he discovered a young boy with B.A. and that she admitted she had had sex with the boy and begged defendant not to tell her mother, or to comment on the legitimate inferences to be drawn from the inconsistencies. According to Stewart, defendant waived his *Miranda* rights. Therefore, if the jury believed Stewart, the insoluble ambiguity present in post-arrest silence which is the basis for the *Doyle* rule would not be present since defendant did not remain silent. Therefore, notwithstanding waiver, the prosecutor's comments in closing argument were not improper references to defendant's post-arrest silence as prohibited by *Doyle*, but permissible impeachment by a prior inconsistent statement.

Defendant also asserts that he was denied a fair trial because the prosecutor made various improper statements during closing argument which (a) unjustly attacked defense counsel, (b) were calculated to inflame the passions of the jury, and (c) were misstatements of the evidence.

Defendant first asserts that the prosecutor improperly attacked defense counsel during his closing argument in an attempt to turn the trial away from the defendant's guilt or innocence and into a trial of defense counsel. Defendant cites *People v. Sanders* (1990), 198 Ill. App. 3d 178, 185, 555 N.E.2d 812, 817, for this proposition. Defend-

ant points specifically to the following comments in the prosecutor's rebuttal closing argument:

"It is coming to the surface how people like J.C. Jones victimize young girls, 14-year old young girls, girls who aren't sophisticated on assault like Miss Shields [Defense Counsel] who can sit for a year and think of some way, what would I have done? I would have gone next door to the neighbor's house.

\* \* \*

And they have the audacity when the doctor describes that white stuff coming out as, running out of her, about not being able to tell the age of the substance coming out of her vagina, running out of her. That is ludicrous. It is a flight into fancy for them to say what they said.

\* \* \*

And what is more you know Miss Shields said the baby would have woken up. Well, she obviously doesn't have children. Because I submit the ladies and gentlemen here who do have children you know that your infants, those babies they could sleep through a tornado and not know what happened. A parent knows that."

The State responds that defendant has waived this argument because his use of "boilerplate" language in his motion for a new trial is not sufficiently specific to preserve the issue for review. If defendant has not waived the argument, the State asserts that all these remarks were invited by defense counsel's closing argument or were legitimate inferences drawn from the evidence. Alternatively, the State argues that any error was harmless.

In his post-trial motion defendant states that "[t]he Court erred in overruling defense objections when the Prosecutor repeatedly referred to defense counsel." This allegation is sufficiently specific to preserve any defense objections to the prosecutor's closing argument. However, defense counsel only objected to the second remark above in which the prosecutor called her argument "ludicrous" and a "flight of fancy." Under the doctrine of waiver, in order to preserve an issue for review, defense counsel must make an objection at trial and renew the objection in a written post-trial motion. (*Enoch*, 122 Ill. 2d at 186, 522 N.E.2d at 1130.) Therefore, defendant has waived consideration of the propriety of the unobjected to passages.

Irrespective of waiver, however, the prosecutor's remarks were not improper. It is clearly established that a prosecutor is given "wide latitude" to comment on the evidence during closing argument and his remarks will not be considered improper "if they are based upon

facts in the record or reasonable inferences drawn therefrom." (*People v. Batson* (1992), 225 Ill. App. 3d 157, 166, 587 N.E.2d 549, 554.) Additionally, comments by the prosecutor during closing argument which are invited and not prejudicial also do not constitute error. (*People v. Franklin* (1990), 135 Ill. 2d 78, 100, 552 N.E.2d 743, 753.) The prosecutor may not accuse defense counsel, however, either expressly or impliedly, of engaging in "defense trickery" or of fabricating a defense. *Sanders*, 198 Ill. App. 3d at 185, 555 N.E.2d at 817; *People v. Thomas* (1983), 116 Ill. App. 3d 216, 222, 452 N.E.2d 77, 81; *People v. Witted* (1979), 79 Ill. App. 3d 156, 165-66, 398 N.E.2d 68, 77.

■ Here, the prosecutor's remarks were not improper, but rather were invited by defense counsel's closing argument as well as being legitimate comments on the evidence. During closing argument, defense counsel argued, in effect, that B.A. was not sexually assaulted because if she were she would have stopped at a neighbor's apartment for help rather than run down 12 flights of stairs nor would she have run two blocks away to use a public phone when there were public phones next to her apartment building and a police station just two blocks in the opposite direction. The prosecutor's response in rebuttal that B.A. was just a scared 14-year-old girl who acted on instinct and did not have a year to consider what others like defense counsel would think would be the most rational response to being sexually assaulted was invited by defense counsel's argument.

In closing argument, defense counsel also asserted that B.A. had had sex with the unidentified boy that defendant testified he discovered in the apartment with her. Counsel argued that a tremendous number of people could have been the donor of the sperm found in B.A. and that no expert testified as to the age of the sperm. In rebuttal, the prosecutor asserted that this argument by defendant was "ludicrous" and "a flight into fancy." Again, this comment was mere argument which was invited by defendant's closing statement and not an improper attack on defense counsel.

Finally, defense counsel argued in closing that if defendant had gone to his brother's home to hide and left the baby in the apartment alone, as the prosecutor asserts, then when Officer Murray knocked on defendant's apartment that morning, the baby would have awakened. In rebuttal, the prosecutor remarked that defense counsel "obviously doesn't have children *** [b]ecause *** you know that *** babies they could sleep through a tornado and not know what happened." This comment was clearly invited by defendant's argument and was not an attempt, as defendant asserts, "to divert the at-

tention of the jury away from the weaknesses of its case *** and turn the proceedings into a trial of [defense counsel]." Although the prosecutor should not have referred to defense counsel in his closing argument, none of his statements accused defense counsel of engaging in improper conduct or fabricating a defense; nor were his comments intended to focus the jury's attention on defense counsel and off defendant's guilt or innocence. Therefore, none of the prosecutor's references to defense counsel were improper attacks justifying reversal.

Second, defendant argues that the prosecutor's opening statement during rebuttal closing argument was intended to improperly "inflame the passions" and "arouse the prejudices" of the jury and, therefore, defendant's conviction should be reversed. The prosecutor began his rebuttal argument as follows: "Shame on [B.A.]. That bitch. Shame on her. Shame on that lying trollop who got up on the stand. That is what they are saying." The State first asserts that defendant has waived this argument on review. If the argument has not been waived, the State contends that the statement was an invited response to defendant's closing argument. Alternatively, the State maintains that any error here was harmless.

Defendant made a contemporaneous trial objection which was overruled. In his post-trial motion, the defendant asserted that "[t]he Assistant State's Attorney made prejudicial, inflammatory and erroneous statements in closing argument designed to arouse the prejudices and passions of the jury, thereby prejudicing the defendant's right to a fair trial." The defendant did not set forth any specific complained-of remarks. This court has consistently held that the use of such "boilerplate" language in a post-trial motion that the prosecutor's remarks in closing argument were "prejudicial, inflammatory, and erroneous statements designed to arouse the passions and prejudices of the jury" without setting forth the specific complained-of remarks is too general and not sufficiently specific to preserve an alleged error for review. (*People v. Harris* (1989), 187 Ill. App. 3d 832, 841, 543 N.E.2d 859, 864; *Thomas*, 116 Ill. App. 3d at 220, 452 N.E.2d at 80.) The statement in the motion that defense counsel prepared it without having the benefit of an official transcript does not add anything since "the errors should have been known to defense counsel even without a transcript." (*People v. Collins* (1984), 127 Ill. App. 3d 236, 240, 468 N.E.2d 1343, 1346.) Therefore, the question of whether the prosecutor made inflammatory remarks has been waived on review. Additionally, the plain error exception does not apply because the evidence was not closely balanced nor was the perceived error of such magnitude that the defendant was denied a fair trial.

■ Assuming *arguendo* that the argument has not been waived, the prosecutor's statement was based upon the evidence and, therefore, not improper. Defendant maintains that he never referred to B.A. as a "bitch" or a "trollop" and that such a characterization "arouse[d] the prejudice of the jury against the defendant, without throwing any light on the question for decision." (*People v. Smith* (1990), 141 Ill. 2d 40, 60, 565 N.E.2d 900, 908.) Defendant's theory throughout trial and as asserted in closing argument, however, was that B.A. had had sex that night with an unidentified boy and then accused defendant of rape because she did not want her mother to know that she had engaged in consensual sexual intercourse. Defendant may not have expressly referred to B.A. as either a "bitch" or a "trollop," and we agree that the prosecutor's language could be considered harsh. The prosecutor's statement, however, is clearly a fair characterization of what defendant wanted the jury to think of B.A. See *Harris*, 187 Ill. App. 3d at 842, 543 N.E.2d at 865.

Defendant's final contention is that he was denied a fair trial because the prosecutor misstated evidence in his closing argument. Specifically, defendant points to the following comments. First, the prosecutor argued to the jury "[w]hat does he [defendant] say? Her mother's putting her up to all this." Defendant asserts that he never made this statement and that, in fact, it is a misstatement of Detective Stewart's testimony. Secondly, defendant points to the prosecutor's rebuttal argument when he said that "[h]e [defendant] says that every time she's run out she had gone over to a friend's house." Defendant again asserts that he never made this statement.

Defendant has also waived this argument. In his post-trial motion defendant alleged that the trial court erred in overruling his "objections to the Prosecutor's misstating of the evidence during closing arguments." General references in a post-trial motion to alleged incorrect statements in closing argument, without factual detail, are insufficient to preserve a perceived trial error for review. (*People v. Phillips* (1989), 186 Ill. App. 3d 668, 682, 542 N.E.2d 814, 823.) Notwithstanding waiver, however, these remarks did not prejudice defendant.

■ Attorneys are given "wide latitude" to comment on the evidence in closing argument (*Smith*, 141 Ill. 2d at 60, 565 N.E.2d at 908), but they may not argue facts not in evidence to the jury. (*People v. Whitlow* (1982), 89 Ill. 2d 322, 341, 433 N.E.2d 629, 637-38.) Improper comments to the jury during closing argument will constitute reversible error, however, only if "there are reasonable grounds for believing the jury was prejudiced by the improper remarks."

(*Whitlow*, 89 Ill. 2d at 341, 433 N.E.2d at 638.) First, the defendant asserts that the prosecutor's characterization in closing argument that defendant is asserting that "[B.A.]'s mother's putting her up to all this" is a misstatement of the evidence. Defendant's objection was overruled and the trial judge stated that the "jury heard the evidence *** and will make the determination as to what the facts are." Defendant responded to this misstatement in closing argument by telling the jury that no witness and no evidence supported the statement. The second statement that defendant complains of was made by the prosecutor in rebuttal when he commented that defendant said "that every time she's run out she had gone over to a friend's house." The defendant actually testified that "every time [B.A.] get ready to get a whippin' she run out of the house and go somewhere."

The first statement above may not have been supported by the evidence, but defense counsel's corrective reference to it in her closing was sufficient to cure any prejudice even though her objection was overruled by the trial judge. The second comment was a fair paraphrase of defendant's testimony. Nonetheless, we conclude that any error or misstatement of the evidence here was inconsequential and harmless beyond a reasonable doubt. (*People v. Sargent* (1990), 207 Ill. App. 3d 631, 637, 566 N.E.2d 318, 323; *Harris*, 187 Ill. App. 3d at 842, 543 N.E.2d at 865.) The two "misstatements" the defendant points out "did not represent a material factor in defendant's conviction, result in substantial prejudice to him, or affect the verdict such that a different result would have been reached had the comments not been made." *Harris*, 187 Ill. App. 3d at 842-43, 543 N.E.2d at 865.

Accordingly, for the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

CAMPBELL and O'CONNOR, JJ., concur.